The STATE of Ohio, Appellee,

v.

BARTON, Appellant.

[Cite as *State v. Barton* (1991), 71 Ohio App.3d 455.]

Court of Appeals of Ohio,
Hamilton County.

No. C–900164.

Decided March 6, 1991.

*Arthur M. Ney, Jr.*, Prosecuting Attorney, and *Stephen J. Wenke*, for appellee.

*H. Fred Hoefle*, for appellant.

*Per Curiam.*

This cause came on to be heard upon an appeal from the Hamilton County Court of Common Pleas.

Defendant-appellant, James A. Barton, has taken the instant appeal from his conviction of child endangering in violation of R.C. 2919.22 and felonious assault in contravention of R.C. 2903.11. On appeal, he advances eleven assignments of error.

The charges against the defendant arose in connection with the events of October 17, 1989, when the three-year-old son of Laura Howell suffered second-degree burns in a shower while in the care of the defendant, with whom Howell and her son were living. The record discloses that, on that day, Howell's morning schedule, which would have enabled her to accompany her son, Billy, to his babysitter's house and still arrive at work on time, was

disrupted when Billy wet his pants. The defendant, who was not scheduled to work until 9:00 a.m., volunteered to drive Billy to the babysitter's house on his way to work.

En route to the babysitter's house, Billy again wet his pants. The defendant returned home, undressed Billy and himself, turned on the shower and, with some coaxing, persuaded Billy to enter the shower. Noting the absence of clean towels and a change of clothes for Billy, the defendant told Billy to stay in the shower and ran to the garage to retrieve Billy's duffle bag from the car.

As he returned from the garage, the defendant heard Billy "yelling." He ran to the bathroom, where he found Billy curled up on the floor of the shower stall. The defendant turned off the water, which he found to be hot but not scalding, and as he lifted Billy from the shower, he noticed a bump on the boy's head. In response to the defendant's inquiries, Billy stated that he was not hurt, but he made it clear to the defendant that he did not wish to return to the shower. The defendant was thus compelled to carry Billy "kicking and screaming" into the shower.

The bump on Billy's forehead gave the defendant cause for concern because of a recent charge of abuse levelled against him by the family of Howell's ex-husband. At approximately 9:30 a.m., the defendant telephoned Howell, informed her that Billy had again wet his pants, and requested that she leave work at noon to take charge of him. As burn marks became visible on Billy's face, the defendant's concern increased, and at 9:45 a.m., he again telephoned Howell and told her that he would pick her up at 10:30 a.m.

The defendant was waiting for Howell when she left work. When she entered the car, Howell found Billy wrapped in a blanket and bearing noticeable bruises on his forehead and under his left eye and what appeared to be a burn mark on his face. The defendant was visibly shaken, but he agreed to Howell's request to drive Billy to the hospital. As they drove, the defendant related to Howell what had transpired. When Howell discerned that they were not driving in the direction of the hospital, the defendant confessed his fear of being charged with abuse. They, therefore, returned to the defendant's house.

When they arrived home, Howell and the defendant undressed Billy and discovered the extent of his injuries. Howell testified at trial that the defendant then refused to drive Billy to the hospital, that he ordered her not to return to the house, and that, with a gun in his hand, he declared that his life was over. Howell drove to the defendant's parents' house to advise them of the defendant's condition and returned to the defendant's house with his mother. Howell then drove Billy to the hospital.

The defendant testified that he declined to drive Billy to the hospital because he was too distraught. He confirmed that his mother came to the house to stay with him, but denied possessing a gun or threatening to take his own life.

Howell arrived at the hospital with Billy at approximately 12:30 p.m. An examination of Billy by hospital physicians revealed second-degree burns on his head, neck, shoulders, back, buttocks and left leg, covering approximately thirty-one percent of his body. A social worker employed by the hospital to investigate possible instances of child abuse concluded that the burns were the result of abuse, based upon her examination of the burns, her perception of a discrepancy between the nature of the burns and the defendant's version of the events as related to her by Howell, and Billy's statement that the defendant held him in the shower, and she reported the matter as such to the authorities.

The defendant was subsequently indicted for child endangering and felonious assault. The charges were tried to a jury, which found the defendant guilty as charged. The trial court sentenced the defendant to consecutive terms of incarceration, and this appeal ensued.

█ The defendant contends in his first assignment of error that the trial court erred in admitting testimony by prosecution witnesses to alleged prior incidents of child and spousal abuse. We find no merit to this contention.

The prosecution elicited at trial testimony by Howell and two social workers to an alleged incident of child abuse involving Billy and the defendant in August 1989. Their testimony established that on Wednesday, August 16, 1989, Howell and her ex-husband's sister brought Billy to Children's Hospital Medical Center for an examination of bruises on his buttocks. An investigation conducted by a hospital social worker suggested that the bruises could have resulted either from Billy's fall in the shower of a swimming-pool locker room on Sunday, August 13, or from a spanking administered by the defendant later that evening to discipline Billy for wetting the floor. The matter was referred to a social worker with Children's Protective Services, whose investigation led her to conclude that, although the bruises on Billy's buttocks were not consistent with the history given, the perpetrator of the abuse could not with any accuracy be determined. Consequently, the matter was not pursued.

Defense counsel filed a motion *in limine* prior to trial seeking to exclude testimony concerning the August 1989 investigation, and during trial, he offered timely objections to this testimony as it was elicited from Howell and the two social workers. The trial court delayed its ruling on the testimony's admissibility until the prosecution rested. However, when, at the close of the

prosecution's case, the issue of admissibility was broached, defense counsel withdrew his objections, stating his belief that the testimony was not damaging, and then went on to explore the matter on direct examination of the defendant.

Testimony concerning spousal abuse was elicited from a social worker who investigated the events of October 17, 1989, and who appeared as a witness for the prosecution. The social worker testified on cross-examination, in direct response to questions posed by defense counsel, that, in the course of her investigation, Howell had alluded to a history of spousal abuse by the defendant involving a former spouse. On redirect examination of the witness, the prosecution received an affirmative response to its inquiry into whether the alleged spousal abuse took the form of physical abuse. Defense counsel offered no objection.

Defense counsel's deliberate and tactical decision to withdraw his objections to testimony concerning the August 1989 child-abuse investigation and his elicitation of and failure to object to testimony concerning alleged spousal abuse preclude the defendant from predicating error on the admission of this testimony unless its admission rises to the level of plain error. See Evid.R. 103(A) and (D); *State v. Clayton* (1980), 62 Ohio St.2d 45, 16 O.O.3d 35, 402 N.E.2d 1189, certiorari denied (1980), 449 U.S. 879, 101 S.Ct. 227, 66 L.Ed.2d 102. After careful consideration of the record, we are unable to conclude that the admission of this testimony constituted fundamental error of such magnitude as to affect either a substantial right of the defendant, see Crim.R. 52(B), or the fairness, integrity or public reputation of judicial proceedings. See *State v. Craft* (1977), 52 Ohio App.2d 1, 6 O.O.3d 1, 367 N.E.2d 1221. We, therefore, overrule the first assignment of error.

█ The defendant presents a related challenge in his second assignment of error, in which he contends that the trial court erred in failing to instruct the jury on the limited purpose for which testimony to the alleged prior incidents of child and spousal abuse could be considered. This contention is equally feckless.

Pursuant to Evid.R. 404(B), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith [but] may * * * be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." When evidence is admitted for one purpose but is inadmissible for another purpose, an instruction restricting the jury's consideration of the evidence must be given, but only upon timely request. Evid.R. 105. The defendant failed to request a limiting instruction, and we cannot say that its absence constituted plain error. See

*State v. Santiago* (Aug. 15, 1990), Medina App. No. 1882, unreported, 1990 WL 118852. We, therefore, overrule the second assignment of error.

█ The defendant asserts in his third assignment of error that he was deprived of his right to a fair trial by various incidents of misconduct on the part of the prosecution. This contention is untenable.

The record does not substantiate the defendant's contention that the prosecutor, in the course of closing argument, called for the jury to convict the defendant to satisfy public demand or suggested that evidence of the defendant's alleged history of child and spousal abuse could be used to prove his guilt of the crimes charged. Defense counsel offered no objection to the prosecutor's remark in his summation that the defendant was "probably" responsible for the bruises on Billy's buttocks which prompted the August 1989 investigation, and the trial court overruled his objection to the prosecutor's statement that, if Billy's burns had been left untreated for "maybe another four or five hours, this would be an aggravated murder case."

It is improper for a prosecutor in closing argument to express his personal belief as to the credibility of a witness or the guilt of the accused or to allude to matters not supported by admissible evidence. *State v. Smith* (1984), 14 Ohio St.3d 13, 14 OBR 317, 470 N.E.2d 883. However, an appellate court will not reverse a conviction on the basis of an improper remark by a prosecutor in closing argument, unless the remark is also shown to have prejudiced a substantial right of the accused. *Id.* We are persuaded beyond a reasonable doubt that the result of the trial would have been no different in the absence of the prosecutor's remarks. See *United States v. Hastings* (1983), 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96. Cf. *Smith, supra.* We, therefore, overrule the defendant's third assignment of error.

█ The defendant contends in his fourth assignment of error that the imposition of sentence upon verdicts of guilty of felonious assault and child endangering contravened the state and federal constitutional guarantees against double jeopardy when the same conduct formed the fundament for each offense. We find no merit to this contention.

The guarantees against double jeopardy contained in Section 10, Article I of the Ohio Constitution and the Fifth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, protect against multiple punishments for the same offense. *North Carolina v. Pearce* (1969), 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656. The Ohio General Assembly has sought to effectuate this aspect of the double jeopardy prohibition in R.C. 2941.25, multiple counts, which provides:

"(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

"(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

Thus, pursuant to R.C. 2941.25, a trial court, in a single proceeding, may convict and sentence a defendant for two offenses, having as their genesis the same criminal conduct or transaction, if the offenses (1) are not allied and of similar import, (2) were committed separately, or (3) were committed with a separate animus as to each offense. *State v. Bickerstaff* (1984), 10 Ohio St.3d 62, 10 OBR 352, 461 N.E.2d 892.

Two distinct statutory offenses constitute allied offenses of similar import if the elements of the respective offenses correspond to such a degree that the commission of one offense will result in the commission of the other offense. *Newark v. Vazirani* (1990), 48 Ohio St.3d 81, 549 N.E.2d 520; *Bickerstaff, supra.* If the offenses are not allied and of similar import, the analysis ends there, and the defendant may be charged with, found guilty of, and sentenced for both offenses. If, however, the offenses are allied offenses of similar import, the court must undertake the second step in the analysis, set forth under R.C. 2941.25(B), and determine whether the offenses were committed separately or with a separate animus as to each. *Vazirani, supra.*

The defendant was convicted of felonious assault in violation of R.C. 2903.11(A)(1) and felony child endangering in violation of R.C. 2919.22(A). A conviction of the offense of felonious assault, as proscribed under R.C. 2903.11(A)(1), must be supported by proof that the defendant knowingly caused serious physical harm to another. A charge of felony child endangering, as proscribed under R.C. 2919.22(A), requires proof that the defendant, as the parent, guardian, custodian, person having custody or control, or person *in loco parentis* of a child under eighteen years of age or a handicapped child under twenty-one years of age, recklessly[1] created a substantial risk to the health or safety of the child by violating a duty of care, protection or support,

---

1. The culpable mental state for a violation of R.C. 2919.22(A) is recklessness. *State v. Williams* (1984), 21 Ohio App.3d 12, 21 OBR 13, 486 N.E.2d 113.

and that the defendant's conduct resulted in serious physical harm to the child.[2]

In *State v. Anderson* (1984), 16 Ohio App.3d 251, 16 OBR 275, 475 N.E.2d 492, we held that felonious assault as proscribed under R.C. 2903.11(A)(1) and child endangering as proscribed under R.C. 2919.22(B)(1)[3] are not allied offenses of similar import. Comparing the elements of the two offenses, we determined that:

" * * * the offense of child endangering has, under the definition set forth in R.C. 2919.22(B)(1), been marked by the legislature with certain attributes so unique that it must be construed as a crime wholly separate and distinct from that of felonious assault, * * * specifically that the legislature has chosen to bestow special protection upon children by crafting an offense that, in essence, involves the infliction of * * * cruel physical abuse on those who have yet to attain the age of majority [and that, because] the peculiar elements at the heart of the crime play no essential part in the definition of felonious assault under R.C. 2903.11(A), it is fair to say that an act of felonious assault will not perforce result in an act of child endangering." *Id.* at 254, 16 OBR at 278, 475 N.E.2d at 496.

Our decision in *Anderson* was based upon a comparison of the elements of felonious assault and child endangering as proscribed under R.C. 2919.-22(B)(1), while our determination in the instant case turns upon a comparison of the elements of felonious assault and child endangering as proscribed under R.C. 2919.22(A). However, the juxtaposition of the elements of the offenses charged in the instant case leads us along a similar path to the same conclusion reached in *Anderson*. See, also, *State v. Goddard* (Mar. 2, 1989), Crawford App. No. 3–87–8, unreported, 1989 WL 17299.

The offenses of felonious assault and child endangering, as charged in the indictment, share the elements of causation and resultant serious physical harm. However, a conviction of felonious assault requires proof that the defendant acted knowingly, while a conviction of child endangering may be obtained upon proof that the defendant acted recklessly. Although proof of

---

**2.** The defendant was charged with and convicted of child endangering in violation of R.C. 2919.22(A), resulting in serious physical harm. A violation of R.C. 2919.22(A) is elevated from a first-degree misdemeanor to a fourth-degree felony if the defendant's conduct results in serious physical harm. R.C. 2919.22(D).

**3.** R.C. 2919.22(B)(1) provides:
"(B) No person shall do any of the following to a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age:
"(1) Abuse the child;
" * * * "

knowledge may suffice to prove recklessness, proof of recklessness is not sufficient to prove knowledge. R.C. 2901.22(E). Consequently, it cannot be said that an act of child endangering will result in an act of felonious assault.

We also note that a charge of felony child endangering under R.C. 2919.-22(A) requires proof that the defendant acted in the capacity of parent, guardian, custodian, person having custody or control, or person *in loco parentis*, and that the defendant, in dereliction of a duty imposed by that status, caused severe physical harm to a child under the age of eighteen or a handicapped child under the age of twenty-one. In contrast, a charge of felonious assault requires proof that the defendant caused serious physical harm to another, without regard for the defendant's status *vis-a-vis* the victim or for the victim's age. Because the elements unique to the offense of child endangering as defined under R.C. 2919.22(A) play no part in the definition of felonious assault, we find, as we did in *Anderson, supra*, that an act of felonious assault will not result in an act of felony child endangering under R.C. 2919.22(A). We, therefore, conclude that felonious assault and child endangering as proscribed under R.C. 2919.22(A) are not allied offenses of similar import.

The defendant concedes that the test for allied offenses of similar import adopted by the Ohio Supreme Court compels the conclusion that the crimes of felonious assault and child endangering are separately punishable.[4] He argues, however, that the allied-offenses test, which was predicated in part on the analysis employed in *Blockburger v. United States* (1932), 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306, no longer obtains, because the *Blockburger* analysis has been effectively superseded by the United States Supreme Court's recent decision in *Grady v. Corbin* (1990), 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548. We are unpersuaded.

The constitutional guarantees against double jeopardy protect against successive prosecutions for the same offense after conviction or acquittal and multiple punishments for the same offense. *Id.* at 515, 110 S.Ct. at 2090, 109 L.Ed.2d at 560 (citing *North Carolina v. Pearce, supra* ). The court in *Grady* held that the Double Jeopardy Clause prohibits successive prosecutions when a subsequent prosecution requires relitigation of factual issues resolved in the first prosecution. In so holding, the court stated that the *Blockburger* test, which was developed in the context of multiple punishments for the same offense in a single prosecution, did not sufficiently protect defendants from the burdens of successive prosecutions, which raise jeopardy concerns that

---

**4.** The defendant's concession was based on our decision in *Anderson, supra.* As we noted *supra,* our holding in *Anderson,* although instructive, is not dispositive of the issue as presented here.

extend beyond an enhanced sentence. The court thus concluded that, in the context of successive prosecutions, the *Blockburger* test is not the exclusive means for ascertaining a double-jeopardy violation. See *Grady, supra,* at 516–517, 110 S.Ct. at 2090–2091, 109 L.Ed.2d at 560–562. In the context of multiple punishments, however, the court in *Grady* left undisturbed the *Blockburger* analysis.

Having thus determined that felonious assault and child endangering under R.C. 2919.22(A) are separately punishable, we overrule the defendant's fourth assignment of error.

■ In his fifth assignment of error, the defendant challenges on alternative bases the entry of judgments of conviction of both felonious assault and child endangering. He contends that R.C. 1.51 requires that the charge of felonious assault, which is proscribed under a general statutory provision, yield to a charge of child endangering, which is proscribed under a special provision. In the alternative, he asserts that his conviction of child endangering is contrary to law when child endangering, as charged in the indictment, is a lesser-included offense of felonious assault. We find no merit to either aspect of this challenge.

The Ohio Supreme Court in *State v. Chippendale* (1990), 52 Ohio St.3d 118, 556 N.E.2d 1134, held that R.C. 1.51, which governs the application of general and special or local statutory provisions, "comes into play only when a general [provision] and a special [or local] provision constitute allied offenses of similar import * * *." *Id.* at 120, 556 N.E.2d at 1137. As we determined in our disposition of the fourth assignment of error, felonious assault and child endangering under R.C. 2919.22(A) are not allied offenses of similar import. Therefore, R.C. 1.51 is inapplicable.

■ Our discussion under the fourth assignment of error also controls our disposition of the defendant's alternative contention. An offense is a lesser-included offense of another if:

" * * * (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense." *State v. Deem* (1988), 40 Ohio St.3d 205, 533 N.E.2d 294, paragraph one of the syllabus.

As we determined *supra,* an act of felonious assault, as statutorily defined, will not perforce result in an act of felony child endangering under R.C. 2919.22(A). Therefore, child endangering as charged in the indictment is not a

lesser-included offense of felonious assault. Accordingly, we overrule the fifth assignment of error.

■ The defendant asserts in his eighth assignment of error that the admission of testimony by a hospital social worker to Billy's out-of-court statement violated his constitutional right of confrontation. We are unpersuaded.

Section 10, Article I of the Ohio Constitution and the Confrontation Clause of the Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, confer upon the accused in a criminal prosecution the right to confront the witnesses against him. The rules of evidence that govern the admissibility of hearsay, see Article VIII of the Ohio Rules of Evidence, protect similar interests, but they do not operate coextensively with the constitutional right of confrontation. The admission of an incriminating out-of-court statement under an exception to the hearsay rule violates the constitutionally guaranteed right of a criminal defendant to confront his accusers unless (1) the prosecution produces or demonstrates the unavailability of the declarant whose statement it seeks to introduce, and (2) the statement bears adequate indicia of reliability. *Idaho v. Wright* (1990), 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638; *Ohio v. Roberts* (1980), 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597.

In response to the prosecution's pretrial request that Billy be declared "unavailable" upon the testimony of his aunt that he was too traumatized to testify, the trial court ruled that Billy was to be made available pursuant to the defendant's subpoena. The issue of three-year-old Billy's competency to testify was neither raised nor resolved in the proceedings below because the prosecution did not call Billy to testify at trial and the defense produced him only to show his height relative to the height of the shower controls. Thus, although the prosecution failed to demonstrate that Billy was unavailable to testify, the requirement that the prosecution produce or demonstrate the unavailability of the declarant was satisfied when the prosecution was subject to the trial court's order that Billy be made available pursuant to the defendant's subpoena.

■ The requirement that the statement bear adequate indicia of reliability is satisfied if it "falls within a firmly rooted hearsay exception" or if it is supported by "a showing of particularized guarantees of trustworthiness." *Wright, supra,* 497 U.S. at ——, 110 S.Ct. at 3147, 111 L.Ed.2d at 653 (quoting *Roberts, supra,* 448 U.S. at 66, 100 S.Ct. at 2539, 65 L.Ed.2d at 608). A statement admissible under the Evid.R. 803(2) excited-utterance exception to the hearsay rule bears circumstantial guarantees of trustworthiness such that adversarial testing of the statement would be of marginal utility. Therefore,

a statement that falls within this "firmly rooted hearsay exception" would satisfy the reliability requirement. See *Wright, supra,* 497 U.S. at ——, 110 S.Ct. at 3149, 111 L.Ed.2d at 656.

Evid.R. 803 provides in relevant part:

"The following are not excluded by the hearsay rule * * *:

" * * *

"(2) *Excited utterance.* A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

" * * * *"

The Ohio Supreme Court in *State v. Duncan* (1978), 53 Ohio St.2d 215, 7 O.O.3d 380, 373 N.E.2d 1234, held that hearsay testimony may be admissible under the excited-utterance exception to the hearsay rule upon a reasonable determination:

"(a) that there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and thus render his statement or declarations spontaneous and unreflective, (b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his reflective faculties, so that such domination continued to remain sufficient to make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, (c) that the statement or declaration related to such startling occurrence or the circumstances of such startling occurrence, and (d) that the declarant had an opportunity to observe personally the matters asserted in his statement or declaration." *Id.,* paragraph one of the syllabus (paragraph two of the syllabus in *Potter v. Baker,* 162 Ohio St. 488, 55 O.O. 389, 124 N.E.2d 140, approved and followed); see, also, *State v. Boston* (1989), 46 Ohio St.3d 108, 545 N.E.2d 1220.

The court below admitted, over defense counsel's objection, testimony by a hospital social worker of Billy's statement to her, made shortly after his arrival at the hospital, that the defendant "held [him] in the shower" and "the water was real hot." Billy's statement clearly was the product of his personal observations and was made relative to and prompted by an occurrence sufficiently startling "to produce a nervous excitement in [him and] to still his reflective faculties." The statement was made more than three hours after the event that prompted it and, therefore, was not strictly contemporaneous with its cause. However, the lapse of time between the statement and its

cause is not dispositive, and it is reasonable to conclude on the evidence before us that Billy's statement was not a product of reflective thought and was made while he was still under the stress of excitement caused by the startling event.' See *Boston, supra,* at 118, 545 N.E.2d at 1230–1231; *Duncan, supra,* 53 Ohio St.2d at 219–222, 7 O.O.3d at 382–384, 373 N.E.2d at 1237–1238. We, therefore, hold that testimony by the social worker of Billy's out-of-court statement was admissible under the Evid.R. 803(2) excited-utterance exception to the hearsay rule.

■ Having thus determined that the prosecution effectively "produce[d]" Billy at trial and that the social worker's testimony to Billy's out-of-court statement was admissible under a "firmly rooted hearsay exception," we hold that the admission of this testimony did not violate the defendant's constitutional right of confrontation. Accordingly, we overrule the eighth assignment of error.

The defendant, in his sixth assignment of error, assails the trial court's admission into evidence of expert opinion testimony as to the cause of Billy's injuries. This challenge is feckless.

■ Evid.R. 702, 703, 704 and 705 govern the admissibility of expert opinion testimony, providing as follows:

"RULE 702. Testimony By Experts

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

"RULE 703. Bases of Opinion Testimony By Experts

"The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing.

"RULE 704. Opinion on Ultimate Issue

"Testimony in the form of an opinion or inference otherwise admissible is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact.

"RULE 705. Disclosure of Facts or Data Underlying Expert Opinion

"The expert may testify in terms of opinion or inference and give his reasons therefor after disclosure of the underlying facts or data. The disclosure may be in response to a hypothetical question or otherwise."

Thus, expert opinion testimony, even on an ultimate issue to be determined by the trier of fact, is admissible if: (1) the witness is qualified as an expert

"by knowledge, skill, experience, training or education," and (2) "scientific, technical, or other specialized knowledge" will aid the trier of fact in understanding the evidence or in determining a fact in issue. *Lee v. Baldwin* (1987), 35 Ohio App.3d 47, 519 N.E.2d 662.

Polly Partin, a social worker employed by Children's Hospital Medical Center to investigate possible child-abuse cases, testified over defense counsel's objection that the pattern and type of burns sustained by Billy were consistent with Billy's statement that the defendant held him in the shower and inconsistent with the defendant's assertion that Billy was placed in the shower with the shower head diverted toward the wall. Partin was qualified as an expert by experience and training. Her opinion was predicated on facts perceived by her and statements properly admitted into evidence, see Evid.R. 703, and was rendered after disclosure of the underlying facts and statements. See Evid.R. 705. The inferences and conclusions to be drawn from the pattern and nature of the burns were not within the experience, knowledge or comprehension of the jury; consequently, expert opinion testimony based upon Partin's "specialized knowledge" served to assist the jury in understanding the evidence and in determining facts in issue. See *Boston, supra*.

The admissibility of expert opinion testimony is committed to the sound discretion of the trial court and will provide a basis for reversal on appeal only upon an abuse of that discretion which amounts to prejudicial error. Evid.R. 103(A); *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 524 N.E.2d 881. We find no abuse of discretion in the admission of Partin's opinion testimony. We, therefore, overrule the sixth assignment of error.

██ The defendant contends in his seventh assignment of error that the trial court erred in refusing his request that Billy be subject to a pretrial, out-of-court interview by a clinical psychologist proposed as a defense expert in evaluating child-abuse investigation procedures and in sustaining the prosecution's objection to defense counsel's attempt to elicit from the psychologist his opinion as to the "certainty of abuse" in the instant case. Neither contention is well taken.

A prospective witness for the prosecution in a criminal action has the right to refuse to speak to or to be interviewed by the defense prior to trial, and, except under certain carefully delineated circumstances that are not present here, he cannot be compelled to do so. *State v. Zeh* (1987), 31 Ohio St.3d 99, 31 OBR 263, 509 N.E.2d 414. Therefore, we perceive no error in the trial court's denial of a pretrial interview with Billy by a defense expert.

██ Turning to the defendant's challenge to the trial court's exclusion of the psychologist's expert opinion testimony, we note that, pursuant to Evid.R.

103(A)(2), error may not be predicated on the exclusion of evidence on direct examination unless the exclusion affects a substantial right and the substance of the excluded evidence was made known to the court by proffer or was apparent from the context in which the questions were asked. *State v. Gilmore* (1986), 28 Ohio St.3d 190, 28 OBR 278, 503 N.E.2d 147. Defense counsel failed to proffer the psychologist's response to his inquiry into whether the psychologist had reached "a conclusion to a reasonable degree of certainty * * * with regard to whether or not there's any certainty of abuse in this case." Although it is clear from the inquiry itself that the witness had arrived at an opinion, we cannot say that the substance of that opinion was readily apparent from the context in which the question was asked. We, therefore, overrule the seventh assignment of error.

The defendant, in his ninth and tenth assignments of error, challenges the trial court's denial of his Crim.R. 29 motion for acquittal and the balance struck by the jury in weighing the evidence adduced at trial. Neither challenge is meritorious.

We hold that the trial court properly overruled defendant's Crim.R. 29 motion when, upon the evidence adduced at trial, reasonable minds could have reached different conclusions as to whether each material element of the crimes of child endangering and felonious assault had been proven beyond a reasonable doubt. See *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184. With respect to the defendant's challenge to the weight of the evidence to support his convictions, we find nothing in the record of the proceedings below to suggest that the jury, in resolving the conflicts in the evidence, lost its way or created such a manifest miscarriage of justice as to warrant the reversal of the defendant's convictions. See *Tibbs v. Florida* (1982), 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652; *State v. Martin* (1983), 20 Ohio App.3d 172, 20 OBR 215, 485 N.E.2d 717. We, therefore, overrule the defendant's ninth and tenth assignments of error.

In his eleventh and final assignment of error, the defendant contends that defense counsel's performance at trial was so deficient that he was deprived of the effective assistance of counsel. This contention is untenable.

Upon examination of the record of the proceedings below, we find that the defendant has failed to demonstrate a reasonable probability that, but for the alleged omissions of counsel, the results of the trial would have been different. See *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. We, therefore, overrule the defendant's eleventh assignment of error.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

Utz, P.J., Klusmeier and Hildebrandt, JJ., concur.