OPINION
Appellant James Daugherty appeals a judgment of the Licking County Common Pleas Court convicting him of Involuntary Manslaughter (R.C. 2903.04), and Domestic Violence (R.C. 2919.25):
ASSIGNMENTS OF ERROR:
 I. THE TRIAL COURT COMMITTED HARMFUL ERROR IN ALLOWING, OVER THE OBJECTION OF COUNSEL FOR THE DEFENDANT-APPELLANT, HEARSAY STATEMENTS ATTRIBUTED TO MS. FREW, TO REACH THE JURY THROUGH THE TESTIMONY OF DETECTIVE SCOTT SNOW.
 II. THE TRIAL COURT COMMITTED HARMFUL ERROR IN ALLOWING, OVER THE OBJECTION OF COUNSEL FOR THE DEFENDANT-APPELLANT, THE EXPERT TESTIMONY OF DR. JOHN HUMMEL CONCERNING THE CREDIBILITY OF CERTAIN WITNESSES.
 III. THE DEFENDANT-APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL, IN VIOLATION OF HIS OHIO AND UNITED STATES CONSTITUTIONAL RIGHTS, DUE TO THE FAILURE OF TRIAL COUNSEL TO SUPPRESS THE STATEMENTS OBTAINED FROM THE DEFENDANT-APPELLANT BY PROBATION OFFICER SCOTT FOULTON.
 IV. THE DEFENDANT-APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL, IN VIOLATION OF HIS OHIO AND UNITED STATES CONSTITUTIONAL RIGHTS, DUE TO THE FAILURE OF TRIAL COUNSEL TO FAILURE TO OBJECT TO THE ADMISSIBILITY OF TESTIMONY DEBRA LAMBOURNE.
On January 4, 1997, Donald Davis was sitting in his house watching television, when his sister told him that someone was ringing the doorbell or knocking at the door. When he went to the door, he discovered that the person had moved to a side door. He opened the door to find an elderly woman with a head wound, bleeding profusely, asking for help. The victim was later determined to be seventy-nine-year-old Elizabeth Frew.
The paramedics and police arrived on the scene. The paramedics noted that Mrs. Frew's heartbeat was irregular. Mrs. Frew was transported to the hospital, where it was determined that she was suffering from a heart attack, in addition to the head wound.
Patrolman Baum, who arrived on the scene, noticed that the door to Mrs. Frew's home was open approximately six inches. The patrolman discovered that the home was in disarray. A china cabinet had been knocked over, and the contents of a shelf strewn on the floor. The telephone was knocked from a table, and the handset was separated from the phone. Patrolman Baum found blood in a sink and toilet upstairs.
Detective Snow proceeded to the hospital to speak with Mrs. Frew. She was shaking and visibly upset. She told the detective that she had come home from dropping off some friends after playing cards. When she arrived home, appellant, her son, was in a very agitated state, and became verbally abusive. He began to yell at her about things that her family had done to him, and things she had done to him. She tried to use the phone to call for help, but he had disabled the phone. At one point, appellant knocked her china cabinet over. She became alarmed about her personal safety, and ran from the house into the street.
Appellant began to chase her down the street. Although she didn't know exactly how many times, or with what object, appellant struck her on the head.
Appellant was arrested on January 5, 1997 for the assault on his mother. When the officer found appellant, appellant responded that he had been expecting the officer.
While appellant was incarcerated, Mrs. Frew died after developing pneumonia, as a complication of the heart attack and head injury. Appellant was informed that his mother had died. Jail officials asked appellant's probation officer, who happened to be at the jail, to watch appellant for a period of time after hearing of his mother's death, as he appeared despondent. Appellant told his probation officer that any person who kills his own mother, deserves to die. Appellant further stated that he wanted to talk to his attorney, as he wanted to plead guilty and receive the death penalty.
Appellant was initially charged with Felonious Assault and Domestic Violence. After the death of Mrs. Frew, these charges were dismissed, and appellant was indicted on one count of Involuntary Manslaughter and one count of Domestic Violence. The case proceeded to jury trial in the Licking County Common Pleas Court. Appellant was convicted of both counts, and sentenced to ten years incarceration.
 I.
Appellant argues that the court erred in admitting hearsay statements of Mrs. Frew through the testimony of Detective Snow. Appellant argues that because of the time lapse between the time of the attack and the statement, the statement did not properly qualify as an excited utterance pursuant to Evid.R. 803(2).
Appellant further argues that the statements were affected by the intervening circumstance of having spoken to her daughter. Finally, appellant claims that although the officer testified that she was upset, she was not sufficiently upset to invoke the exception for an excited utterance.
To be admissible under Evid.R. 803(2) as an excited utterance, a statement must concern some occurrence startling enough to produce a nervous excitement in the declarant, which occurrence the declarant had an opportunity to observe, and must be made before there had been time for such nervous excitement to lose domination over his reflective faculties. State vs. Simko
(1994), 71 Ohio St.3d 483, 490. There is no per se amount of time after which a statement can no longer be considered an excited utterance; the central requirement is that the statement must be made while the declarant is still under the stress of the event, and the statement may not be a result of reflective thought.State vs. Taylor (1993), 66 Ohio St.3d 295. A three-hour time lapse between the time a child was scalded and a statement does not render the statement inadmissible as an excited utterance.State vs. Barton (1991), 71 Ohio App.3d 455.
The court did not abuse its discretion in admitting Mrs. Frew's statement to Detective Snow as an excited utterance. The statement was elicited approximately one and one-half hours after she was first seen by the emergency squad. She had suffered a head wound and a heart attack. Detective Snow described the victim as upset, shaking, and on the brink of tears.
The fact that the declarant spoke to her daughter before speaking to Detective Snow does not render the statement inadmissible as an excited utterance. In State vs. Smith (1986),34 Ohio App.3d 180, this court held in a Richland County case that a statement given to a police officer by a rape victim was admissible as an excited utterance, even though it was given to the officer thirty to forty-five minutes after the event, and she had previously spoken to neighbors. Appellant's claim that his mother's identification of him as the assailant was improperly influenced by his sister goes to the weight to be given the evidence, not its admissibility.
In addition, even if error occurred in the admission of the statement, it was harmless. A nurse testified that Mrs. Frew told her that her son had followed her out of her house and knocked her down. Similarly, the victim's family physician testified that she stated something to the effect that her son did this to her. This testimony is not subject to challenge on appeal, and the doctor's testimony was not objected to at trial. Therefore, the testimony of Detective Snow is cumulative to other evidence identifying appellant as the assailant.
The first Assignment of Error is overruled.
 II.
Appellant argues that the court erred in allowing Dr. Hummel to testify as to the effect a traumatic event and medication would have on statements given by a patient. He claims that this is improper opinion testimony on the truthfulness of a specific witness.
Appellant's reliance on State vs. Boston (1989), 46 Ohio St.3d 108, is misplaced. Boston concerned expert testimony concerning the veracity of the statement of a particular witness.Boston set out a rule of law specifically applicable to the testimony of child sexual abuse victims. Boston does not apply where the expert testifies in general terms concerning the general response of a victim, and not the specific credibility of the victim in question. State vs. Daniel (1994), 97 Ohio App.3d 548,563.
In the instant case, the doctor testified that a patient in Mrs. Frew's medical condition, is capable of reporting events accurately. He did not testify that this particular victim was reliably reporting what happened. The door to this testimony was opened by appellant, as through cross-examination, counsel challenged the accuracy of Mrs. Frew's statements on the basis that she was confused and disoriented at times during her illness.
The second Assignment of Error is overruled.
 III.
Appellant argues that counsel was ineffective for failing to move to suppress his statements to his probation officer.
A defendant asserting a claim of ineffective assistance of counsel must demonstrate that counsel's performance fell below an objective standard of reasonable representation, and he was prejudiced by such performance. Strickland vs. Washington (1984),466 U.S. 668; State vs. Bradley (1989), 42 Ohio St.3d 136, cert.denied, 497 U.S. 1011. To demonstrate prejudice, the defendant must show that there exists a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id. When an ineffective assistance of counsel claim is predicated upon failure to litigate a suppression issue, the defendant has to show a meritorious constitutional claim.Kimmelman vs. United States (1986), 477 U.S. 365.
Appellant has not demonstrated from the record that the statement given to the probation officer would have been suppressed had counsel filed an appropriate motion. The record does not affirmatively indicate whether appellant had been advised of his rights pursuant to Miranda vs. Arizona. In addition,Miranda only applies to a custodial situation that involves police words or conduct which the officer knows is reasonably likely to elicit an incriminating response from the suspect.Rhode Island vs. Innis (1980), 446 U.S. 291. The probation officer was asked by the jail chaplain to watch appellant while the chaplain made a phone call on appellant's behalf. When he encountered appellant in the holding cell, appellant was crying. The probation officer knew that appellant was a religious person, and said, "My prayers are with you." He asked appellant how he was doing, and appellant responded, "I want to talk to my attorney. I want to plead guilty to everything. I want the death penalty. That's what I deserve. No one should kill their mother." Tr. 194. The probation officer asked appellant if that is what he really wanted. Appellant responded that he did. He then asked appellant who his attorney was. Appellant did not answer. He then said, "James, you really don't want that. Wouldn't you rather go to a hospital and get some help?" Tr. 195. Appellant responded that the doctors at the hospital wouldn't be able to keep him from hurting people again.
Appellant has not demonstrated that his probation officer knew that his words were likely to elicit an incriminating response from appellant. It is clear from the record that his sole purpose in being in the room with appellant was to watch over him, given his despondent state, in the absence of the chaplain. He had no investigative responsibility with regard to the charges.
In addition, on the day of his arrest, appellant made incriminating statements to Patrolman Baum after being advised of his Miranda rights. After being informed that his mother had been hurt, appellant said that he should go to jail for the rest of his life.
Appellant has not demonstrated that a suppression motion would have been successful. Appellant has not demonstrated prejudice from counsel's failure to move to suppress the statement given to the probation officer.
The third Assignment of Error is overruled.
 IV.
Appellant argues that counsel was ineffective for failing to object to the testimony of the DNA expert on the basis of hearsay. Appellant argues that the expert's testimony that two vials of blood submitted to her were blood standards of appellant and the victim is based on information from the labels on the vials, and such labels constitute inadmissible hearsay.
Evid.R. 803(1) excepts from the hearsay rule any statement describing or explaining an event or condition made while the declarant was observing the event or condition, or immediately thereafter. A label placed upon a vial of blood, which serves to describe when and from whom the blood was drawn, is a present sense impression pursuant to the rule. Detective Elliget testified that he witnessed the drawing of the victim's blood sample, which thereafter was taken to the police lab for testing. Similarly, Detective Hatfield testified that he drew the sample of blood from appellant, and thereafter logged it into the property room, for eventual transportation to the crime lab. Appellant has not demonstrated that counsel erred in failing to object to the expert's testimony concerning the identity of the blood she received for testing.
The fourth Assignment of Error is overruled.
The judgment of the Licking County Common Pleas Court is affirmed.
By: Reader, J., Gwin, P. J. and Wise, J. concur.