DECISION
This is an appeal by defendant, David L. Cudgel, from a judgment of sentence and conviction entered by the Franklin County Court of Common Pleas following a jury trial in which defendant was found guilty of felonious assault and endangering children.
On April 20, 1998, defendant was indicted on one count of felonious assault, in violation of R.C. 2903.11, and two counts of endangering children, in violation of R.C. 2919.22. The indictment arose out of injuries to defendant's son, Devanique Whitfield Cudgel ("Devanique"). Devanique was approximately three months old at the time of the events leading to the indictment.
On the afternoon of March 19, 1998, defendant and his sister, Lorvina Pruitt, took Devanique to Franklin County Children Services, located at 525 East Mound Street. A nurse in the office assessed the child's condition and found that the child had a burn injury on his back. The nurse also noticed that the child was not focusing with his eyes.
The nurse instructed a worker to call 911, and paramedics arrived at the building shortly thereafter, at approximately 4:10 p.m. The child was administered oxygen and medication to assist in clearing his lungs. According to a report prepared by emergency personnel at that time, the child "appeared listless." (Tr. 158). The report also indicated that the child had "burns of the back in the healing stages." (Tr. 159.)
Devanique was transported to Children's Hospital, where he was admitted at approximately 5:00 p.m. Devanique was initially admitted to the pediatric intensive care unit, where he was placed on a respirator.
Dr. Charles Johnson, the director of the child abuse program at Children's Hospital, testified that, at the time of the child's admission, Devanique had a "bulging fontanel"[1] and he was not responding to movements. The child exhibited "tachycardia" (excessive heart rate) and "sunset eyes," a serious sign indicating pressure in the brain. (Tr. 321.) Devanique also had a burn mark on his back. Dr. Johnson stated that the burn mark was unusual, "most likely liquid, possibly from steam, and possibly something that was hot, like a towel that contained hot water that was placed on the child." (Tr. 326.) The burn appeared to be "more than 10 days old." (Tr. 326.) The child's clavicle was fractured, and Dr. Johnson opined that the fracture was more than seven days old. (Tr. 329.)
A CT scan of the child's brain revealed "chronic and acute bleeding in the head." (Tr. 322.) According to Dr. Johnson, the results of the tests were "typical of * * * shaken/impact syndrome." (Tr. 332.) Dr. Johnson rendered opinions that the child's brain injuries occurred by severe "shaking," and that the skin was injured "by burn." (Tr. 352.) He further opined that a child receiving such injuries would have displayed symptoms of neurological deficit almost immediately. Dr. Johnson stated that it was "likely" that the burn on the child preceded the shaking incident. (Tr. 346.)
Devanique is currently under the care of a foster parent. Dr. Johnson stated that, while the child has subsequently experienced some return of functions, he "has a variety of neurological difficulties," and "the brain is now abnormal." (Tr. 336.)
Columbus Police Detective Darryl Kershaw and his partner, Richard Mays, conducted an investigation into the injuries received by Devanique. Detective Kershaw was dispatched to Children's Hospital on the day Devanique was admitted, and he interviewed the defendant and defendant's sister, Lorvina Pruitt, at that time.
Detective Kershaw later interviewed the defendant at police headquarters. The defendant told Detective Kershaw that on March 11, 1998, he picked up Devanique from the boy's natural mother. The defendant stated that he had been the child's primary caregiver from March 11 through the time Devanique was admitted to the hospital on March 19. When Detective Kershaw asked the defendant whether Devanique had any outward marks or injuries, the defendant responded that "the child was fine." (Tr. 207.)
The detective questioned the defendant about the events from March 11 through March 19. The defendant told Detective Kershaw that on March 18, he and Devanique went to the home of defendant's sister, Lorvina Pruitt. The defendant related that he played a video game with Pruitt's husband, while Devanique was in a carrier near the defendant. According to defendant, his sister was concerned about the child's condition; she thought the child was constipated. A phone call was placed to "Ask-A-Nurse," and they were instructed to give the child some apple juice. The defendant indicated to the detective that, during that evening, the child was lethargic and his eyes "were sitting to the right in the corner." (Tr. 217.) The defendant stated that he and Devanique spent the night at the Pruitt residence. Defendant and the child slept in the downstairs living room.
The defendant related to the detective that the next day, March 19, he observed "more of the lack of movements or twitch movements." (Tr. 218). On the morning of March 19, two more calls were placed to Ask-A-Nurse. During the first call, the caller reported that the child's eyes were turning to the left, and the nurse stated that the child should be taken to a hospital. A second call was placed to Ask-A-Nurse later in the morning in which the caller reported a burn to the child's back. Although the caller was instructed again to take the child to a hospital for medical treatment, no action was taken at that time.
The defendant told Detective Kershaw that, from March 11 to March 18, he had not noticed any burns on the child. The defendant indicated that on the evening of March 18, after he had taken Devanique to his sister's residence, he noticed for the first time a burn or rash on the child's back.
The defendant and his sister eventually drove to Franklin County Children Services on the afternoon of March 19. Detective Kershaw asked the defendant why he did not take the child to the hospital. The defendant responded that, "the hospital would in turn contact Children Services, they would be in his business and there's possibility of they would remove the child from him." (Tr. 231.)
The matter came for trial before a jury beginning on February 9, 1999. Following the presentation of evidence, the jury returned verdicts finding defendant guilty of all three counts of the indictment. The trial court sentenced defendant by entry filed April 8, 1999. The court imposed a sentence of eight years incarceration as to counts one and three, with the sentences to run concurrently, and further imposed a term of incarceration of four years as to count two, ordering that sentence to run consecutively to counts one and three.
On appeal, defendant sets forth the following two assignments of error for review:
 1. THE TRIAL COURT VIOLATED THE DOUBLE JEOPARDY PROTECTIONS AFFORDED BY THE FEDERAL AND STATE CONSTITUTIONS AGAINST CUMULATIVE PUNISHMENTS WHEN IT SENTENCED DEFENDANT-APPELLANT TO CONSECUTIVE SENTENCES FOR THE SAME CRIMINAL CONDUCT.
 2. THE TRIAL COURT ERRED WHEN IT ENTERED JUDGMENT AGAINST THE DEFENDANT WHEN THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A CONVICTION AND WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.
For purposes of discussion, we will address defendant's assignments of error in inverse order. Under the second assignment of error, defendant contends that his convictions for felonious assault and child endangering are not supported by sufficient evidence and are against the manifest weight of the evidence.
The legal concepts of sufficiency of the evidence and weight of the evidence are different. State v. Thompkins (1997),78 Ohio St.3d 380, paragraph two of the syllabus. In order to determine whether evidence is sufficient to sustain a conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. The test for reviewing the sufficiency of the evidence, however, is slightly different, "and `the evidence is not construed most strongly in favor of the state.'" State v. Booth (May 6, 1999), Franklin App. No. 98AP-944, unreported, quoting State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387, unreported. Rather, "the appellate court must engage in a limited weighing of the evidence to determine whether there is sufficient, competent credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt." Booth, supra.
In the present case, defendant was convicted of one count of felonious assault, under R.C. 2903.11, and two counts of endangering children under R.C. 2919.22(A) and (B)(2), respectively. R.C. 2903.11(A)(1), defining the offense of felonious assault, provides that no person shall knowingly "[c]ause serious physical harm to another." Pursuant to R.C.2901.22(B), a person "acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
R.C. 2919.22(A) states in pertinent part that:
 No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age, shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support. * * *
R.C. 2919.22(B)(2) provides that:
 (B) No person shall do any of the following to a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age:
* * *
(2) Torture or cruelly abuse the child[.]
The Ohio Supreme Court has held that "[t]he existence of the culpable mental state of recklessness is an essential element of the crime of endangering children under R.C. 2919.22(A)."State v. McGee (1997), 79 Ohio St.3d 193, syllabus. Recklessness is also the culpable mental state for child endangering under R.C.2919.22(B)(2) and 2919.22(B)(3). See State v. Adams (1980),62 Ohio St.2d 151 (construing R.C. 2919.22(B)(2)); State v. O'Brien
(1987), 30 Ohio St.3d 122 (construing R.C. 2919.22(B)(3)).
In the present case, there was extensive testimony by Dr. Johnson indicating that Devanique sustained serious physical harm. As noted under the facts, Dr. Johnson rendered an opinion that the child suffered from shaken baby syndrome. He described the shaking required to cause the injuries in this case as "severe." (Tr. 336.) In such cases, the force of the shaking actually causes blood vessels in the victim's brain to shear, and Dr. Johnson noted that the child would have displayed symptoms of neurological deficit almost immediately. He stated that the shaking incident likely occurred close in time to when the first symptoms were observed. Dr. Johnson opined that the injuries to Devanique occurred no more than seventy-two hours prior to the time he examined the child on March 20. Dr. Johnson also provided testimony regarding other injuries to the child, i.e., a burn to the child's back and a fractured clavicle.
Defendant does not appear to dispute evidence regarding the severe and permanent nature of the child's injuries or that the injuries were consistent with shaken baby syndrome. Nor does defendant challenge the convictions based on whether there was evidence that the injuries were the result of either intentional or reckless conduct, i.e., that the perpetrator must have been aware that violently shaking a three-month old baby would have the substantial probability of causing serious physical harm. Defendant contends, however, that there was insufficient evidence linking him to the child's injuries. Specifically, defendant argues that there was evidence that other individuals, especially on the night of March 18, 1998, were near the child and could have caused the harm he sustained. Defendant also argues that the evidence was insufficient to support a conviction under R.C.2919.22(A) because, defendant asserts, there was a lack of evidence that any delay in seeking medical attention for the child caused the risk of any further injury to the child's health.
In construing the evidence most strongly in favor of the state, the evidence indicates that defendant, by his own admission, was the primary caregiver of Devanique throughout the critical time of the events in which the child received his injuries. The defendant told Detective Kershaw that "he had care for the child 24-7" from the time he picked the child up from the natural mother on March 11 until the child was taken to the hospital on March 19. Defendant told the detective that, even when he was at his sister's house he "was still the primary caregiver," and that he fed the child, bathed the child and changed his diapers. The defendant did not indicate to the detective that the child was out of his sight while defendant and Devanique were at his sister's house, and the evidence does not suggest that any other individuals were alone with the child for any significant period of time. The defendant related that he put Devanique in a carrier near his side while defendant played video games with his sister's husband.
The defendant further told Detective Kershaw that, on March 18, his sister was concerned that the child was lethargic. The child's eyes were "sitting in on one side," and he "had a twitching motion." (Tr. 217.) That evening, the first phone call was placed to Ask-A-Nurse. The records admitted at trial indicated that the subject of the call was a report that the child was constipated. The defendant slept in the same downstairs room of his sister's house with Devanique that night. The defendant told the detective that he "stayed up most of the night with the child." (Tr. 229.) Early that next morning, defendant was the first person to call Ask-A-Nurse and report that the child was experiencing symptoms indicative of a neurological condition. Specifically, the record of this call indicates that the defendant reported that the baby's eyes were "turning to left frequently with no reported stimulus." (State Exhibit No. 8.) The defendant was instructed to take the child to the hospital. At that time, however, no attempt was made to call 911. Later in the morning, at 11:37 a.m., a third call was made to Ask-A-Nurse. The record of that call indicates that defendant's sister described a burn on the child. Later that afternoon, the defendant and his sister took the child to Franklin County Children's Services. Devanique was not transported to Children's Hospital until approximately 5:00 p.m. that day.
In the present case, the jury could have found various explanations provided by defendant to the detective to be implausible, and the trier of fact could have reasonably inferred that defendant was aware of the events leading to his son's injuries and that the truth was unfavorable to him. The evidence indicated that the burns to the child's back were probably inflicted between two to four days prior to the child's admission to the hospital, and thus apparently occurred prior to the time defendant arrived at his sister's house on March 18. Despite the severity of the burns, described by Dr. Johnson as second and third degree burns, no effort was made to seek immediate treatment. The trier of fact could have reasonably concluded that the individual responsible for bathing and clothing the child should have been aware of such a severe condition. Further, despite being instructed by the individual at Ask-A-Nurse early on the morning of March 19 to take the child for immediate medical treatment, defendant waited until later in the afternoon to seek assistance for the child. However, rather than taking the child to a hospital, defendant and his sister took the child to Franklin County Children's Services. Defendant's explanation to the detective was that "the hospital would in turn contact Children's Services, they would be in his business and there's possibility of they would remove the child from him." (Tr. 231.)
Evidence sufficient to support a conviction may be "direct, circumstantial or both." State v. Davis (Sept. 24, 1998), Franklin App. No. 98AP-192, unreported. Further, "[c]ircumstantial and direct evidence possess the same probative value," and "[w]hen the state relies on circumstantial evidence to prove the essential elements of its case, there is no need for such evidence to be irreconcilable with any reasonable theory of defense in order to support a conviction." Id., citing Jenks,supra. In the present case, despite the absence of direct evidence of the identity of the perpetrator, we find that there was sufficient circumstantial evidence by which a jury could have determined, beyond a reasonable doubt, that defendant acted knowingly, and thus recklessly, in causing serious physical injury to the child. The relevant evidence included defendant's own admission that the child was near or at his side during the relevant time frame, the nature and apparent chronological order of the injuries (i.e., a severe burn and later in time shaken baby syndrome during the period when defendant cared for the child), the fact that defendant was the individual who first reported neurological symptoms of the child on the morning of March 19, defendant's implausible explanation that he was unaware of a healing, two to four-day-old burn wound to the child despite the fact the child was under his care during the relevant time period, and defendant's reluctance to the take the child to the hospital based on his fear that the hospital would "be in his business" and possibly take the child from him. Thus, we conclude that there was sufficient evidence to support defendant's convictions for felonious assault, under R.C. 2903.11, and child endangering under R.C. 2919.22(B)(2). See State v. Williams (Mar. 5, 1992), Franklin App. No. 91AP-653, unreported (finding sufficient circumstantial evidence to support defendant's conviction for endangering children where facts indicated child was abused and that defendant was the primary caretaker responsible for child at the time of manifestation of child's injuries).
We also disagree with defendant's contention that the evidence was insufficient to support a conviction for child endangering under R.C. 2919.22(A) because, it is contended, there was a lack of medical evidence that any delay in seeking medical attention for the child caused the risk of further injury. In the present case, the record indicates that Devanique received a serious second or third degree burn to his back and that he was shaken so severely that he suffered from shaken baby syndrome. Regarding the evidence as to shaking, Dr. Johnson testified that, based on the severity of the injuries, the child would have displayed symptoms of neurological deficit almost immediately. Dr. Johnson further stated that he "expected this baby was unconscious after the shaking" and that "[s]omebody should have reported a normal baby that suddenly was abnormal." (Tr. 339.) Here, a rational trier of fact could have found, beyond a reasonable doubt, that defendant's delay of six hours or more in seeking medical treatment for Devanique violated a duty of care and protection and created a substantial risk to the health or safety of the child.
Further, in considering defendant's manifest weight argument, we conclude that the trier of fact did not lose its way in rendering its verdict. Based on the record in this case, we will not substitute our judgment for that of the jury, and we thus reject defendant's contention that his convictions were against the manifest weight of the evidence.
Defendant's second assignment of error is without merit and is overruled.
Under the first assignment of error, defendant asserts that the trial court erred in failing to merge counts one (felonious assault under R.C. 2903.11) and two (endangering children under R.C. 2919.22(A)) of the indictment for purposes of sentencing. Defendant argues that the court's failure to merge these counts violated double jeopardy protections against cumulative punishment.
R.C. 2941.25, Ohio's multiple count statute, states:
 (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.
In State v. Rance (1999), 85 Ohio St.3d 632, 635-636, the Ohio Supreme Court recently addressed the issue of an R.C.2941.25 analysis, holding in pertinent part:
 * * * This court has stated that Ohio's multiple-count statute "is a clear indication of the General Assembly's intent to permit cumulative sentencing for the commission of certain offenses." * * *
 With its multiple-count statute Ohio intends to permit a defendant to be punished for multiple offenses of dissimilar import. R.C. 2941.25(B) * * *. If, however, a defendant's actions "can be construed to constitute two or more allied offenses of similar import," the defendant may be convicted (i.e., found guilty and punished) of only one. R.C. 2941.25(B). But if a defendant commits offenses of similar import separately or with a separate animus, he may be punished for both pursuant to R.C. 2941.25(B). State v. Jones (1997), 78 Ohio St.3d 12, 13-14 * * *.
 * * * The applicable test for deciding * * * [whether crimes are allied offenses of similar import] is as follows: If the elements of the crimes "`correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import.'" Id. at 13 * * *. If the elements do not so correspond, the offenses are of dissimilar import and the court's inquiry ends — the multiple convictions are permitted. R.C. 2941.25(B). * * *
The court in Rance noted that an inherent problem in the "application of the test for similar/dissimilar import is whether the court should contrast the statutory elements in the abstract or consider the particular facts of the case." Rance, supra, at 636. The court noted that, in some past cases, it had compared the elements of the crimes by reference to the particular facts alleged in the indictment, while in other cases it compared the statutory elements of the offenses in the abstract. The court further noted that "[t]his inconsistency has caused disharmony among the appellate courts." Id. at 638. The court in Rance
clarified that, "under an R.C. 2941.25(A) analysis the statutorily defined elements of the offenses that are claimed to be of similar import are compared in the abstract." Id.
Thus, pursuant to Rance, a court's task is to align the elements of each crime "in the abstract" and assess whether the statutory elements of the crimes "`correspond to such a degree that the commission of one crime will result in the commission of the other.'" Id. If the elements so correspond, "the defendant may not be convicted of both unless the court finds that the defendant committed the crimes separately or with separate animus." Id. at 638-639.
This court has, on at least two prior occasions, addressed the issue whether the crimes of felonious assault and endangering children are allied offenses of similar import, and concluded that the offenses merged for purposes of sentencing. State v.Madison (June 22, 1993), Franklin App. No. 92AP-1461, unreported and State v. Gulertekin (Dec. 3, 1998), Franklin App. No. 97APA12-1607, unreported. However, both cases involved a consideration of child endangering under R.C. 2919.22(B)(2), rather than the statutory provision at issue in the instant case, R.C. 2919.22(A). Further, both cases were decided prior to Rance,supra, and in those cases this court considered the elements in reference to "the facts of this case." Madison, supra,Gulertekin, supra, ("under the particular facts of this case * * * the trial court did not err in merging the offenses of felonious assault and child endangering for purposes of sentencing").
As noted, at issue in the instant case is child endangering under R.C. 2919.22(A). Our research reveals only one case, following Rance, in which a court was called on to consider whether the offenses of felonious assault and child endangering are allied offenses of similar import. In State v. Ross (Oct. 25, 1999), Clermont App. No. CA99-01-004, unreported, the defendant was charged with child endangering under R.C. 2919.22(B)(2). InRoss, the court distinguished this court's decision in Madison,supra, on the basis that "[t]he Madison court's analysis of the offenses in that case was based upon the factual allegations made by the prosecution, following the rule set forth in Vazirani."Ross, supra. Thus, the Ross court, noting the Ohio Supreme Court's "disapproval of this fact-based analysis," found the reasoning in Madison to be unpersuasive. Id. The court in Ross
further noted that "[c]ourts which have undertaken an examination of the elements of the two offenses in the abstract, as mandated by Rance, have found that felonious assault under R.C.2903.11(A)(1) and child endangering under R.C. 2919.22(B)(2) are not allied offenses of similar import." Id., citing State v.Anderson (1984), 16 Ohio App.3d 251, overruled on other grounds, and State v. Campbell (1991), 74 Ohio App.3d 352.
In a pre-Rance decision, the court in State v. Barton
(1991), 71 Ohio App.3d 455, employed a strict comparison of the elements analysis in holding that child endangering under R.C.2919.22(A) and felonious assault under R.C. 2903.11(A)(1) are not allied offenses of similar import. Specifically, the court inBarton held in pertinent part:
 * * * A conviction of the offense of felonious assault, as proscribed under R.C. 2903.11(A)(1), must be supported by proof that the defendant knowingly caused serious physical harm to another. A charge of felony child endangering, as proscribed under R.C. 2919.22(A), requires proof that the defendant, as the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age or a handicapped child under twenty-one years of age, recklessly created a substantial risk to the health or safety of the child by violating a duty of care, protection or support, and that the defendant's conduct resulted in serious physical harm to the child.
* * *
 The offenses of felonious assault and child endangering, as charged in the indictment, share the elements of causation and resultant serious physical harm. However, a conviction of felonious assault requires proof that the defendant acted knowingly, while a conviction of child endangering may be obtained upon proof that the defendant acted recklessly. Although proof of knowledge may suffice to prove recklessness, proof of recklessness is not sufficient to prove knowledge. R.C. 2901.22(E). Consequently, it cannot be said that an act of child endangering will result in an act of felonious assault.
 We also note that a charge of felony child endangering under R.C. 2919.22(A) requires proof that the defendant acted in the capacity of parent, guardian, custodian, person having custody or control, or person in loco parentis, and that the defendant, in dereliction of a duty imposed by that status, caused severe physical harm to a child under the age of eighteen or a handicapped child under the age of twenty-one. In contrast, a charge of felonious assault requires proof that the defendant caused serious physical harm to another, without regard for the defendant's status vis-vis the victim or for the victim's age. Because the elements unique to the offense of child endangering as defined under R.C. 2919.22(A) play no part in the definition of felonious assault, we find * * * that an act of felonious assault will not result in an act of felony child endangering under R.C. 2919.22(A). We, therefore, conclude that felonious assault and child endangering as proscribed under R.C. 2919.22(A) are not allied offenses of similar import.
Thus, although decided prior to Rance, supra, the court in Barton
considered the elements in the abstract in concluding that endangering children under R.C. 2919.22(A) and felonious assault under R.C. 2903.11(A)(1) are not allied offenses of similar import.
Even assuming, arguendo, that the offenses at issue constitute allied offenses of similar import, in the instant case, we would find no error in the trial court's failure to merge these counts because of evidence that the crimes were committed with a separate animus. Specifically, there was evidence indicating that the child was violently shaken (i.e., felonious assault) and evidence that, following the shaking incident, defendant further endangered the child when he delayed seeking medical treatment for the purpose of concealing the crime. Accordingly, based on evidence that the crimes were committed with a separate animus, the trial court did not err in failing to merge the offenses of felonious assault and child endangering.
Defendant's first assignment of error is without merit and is overruled.
Based upon the foregoing, defendant's first and second assignments of error are overruled and the judgment of the trial court is hereby affirmed.
Judgment affirmed.
BROWN and McCORMAC, JJ., concur.
McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), ArticleIV, Ohio Constitution.
[1] Dr. Johnson described the fontanel as the soft spot on a baby's head.