OPINION
{¶ 1} Defendant-Appellant, Marcus Troglin, appeals from a judgment of the Union County Court of Common Pleas, imposing sentences on him for one count of felonious assault and two counts of child endangerment. On appeal, Troglin asserts, through counsel, that the trial court erred in denying his Criminal Rule 29 motion for judgment of acquittal; that the findings by the jury were against the manifest weight of the evidence; and, that the trial judge erred when making additional comments to the jury following a charge given in compliance with State v. Howard
(1989), 42 Ohio St.3d 18. Additionally, Troglin asserts, pro se, that the trial court erred when it sentenced him to a non-minimum prison term and when it imposed consecutive sentences on him based on facts not found by the jury or admitted by the him in violation of Blakely v. Washington (2004), 542 U.S. 296. Upon review of the entire record, we find that the trial court properly rejected Troglin's motion for judgment of acquittal; that the guilty findings were not against the manifest weight of the evidence; that the additional comment after the Howard
charge did not destroy the balance created by the Ohio Supreme Court; and, that as well established by the prior precedent of this Court, Blakely does not apply to Ohio's felony sentencing scheme. However, we find that when Troglin was found guilty of child endangering, in violation of R.C. 2919.22(B)(1), the offense should have been classified as a felony of the second degree instead of a felony of the third degree, and as a result, Troglin's sentence with respect to that count is void. We remand for resentencing on Troglin's violation of R.C. 2919.22(B)(1), so that the sentencing court can impose the proper sentence in accordance with the Ohio sentencing statutes and guidelines. However, the judgment of the trial court is affirmed in all other respects.
 {¶ 2} In February of 2004, a grand jury indicted Troglin for one count of felonious assault, in violation of R.C. 2903.11(A), a felony of the second degree; one count of child endangering, in violation of R.C. 2919.22(A), a felony of the third degree; and, one count of child endangering, in violation of R.C.2919.22(B)(1), a felony of the third degree. In March of 2004, Troglin pled not guilty to all three counts in the indictment.
 {¶ 3} In September of 2004, a jury trial was held. At trial, Amber Troglin, Troglin's wife, testified that on January 9, 2004, she took their son, Ian Troglin, to the emergency room at Marysville Memorial Hospital, in Marysville, Ohio. According to Amber's testimony, she believed Ian had respiratory syncytial virus, a bronchial infection commonly known as RSV. Amber testified that during the visit, Ian was prescribed medication and had bruises on his sides. Amber also testified that the doctor treating Ian inquired about his bruises, to which Amber told a nurse that on January 4 or 5, 2004, Ian had flipped over in his ExerSaucer or that Ian's two-year-old brother, Isaac, might have pushed him over in his ExerSaucer.[1]
 {¶ 4} With regards to the January 4 or 5, 2004 events, Troglin testified that while he was preparing a bottle for Ian, Ian and Isaac were playing in Ian's upstairs bedroom. Troglin testified that he heard a "boom [and] crying" from upstairs. And, when Troglin reached the top of the stairs, he saw Isaac leave Ian's room. Troglin then testified that when he entered Ian's room, he saw Ian lying on the ground, crying, and visibly upset, with his ExerSaucer on top of him. Troglin testified that he believed Isaac had pushed Ian over, because on previous occasions, he had seen Isaac strike Ian on the head with a wiffle ball bat.
 {¶ 5} Amber and Troglin testified that on January 13, 2004, they took Ian to see Dr. Jessica Spelman, the Troglin's family doctor, at the Convenient Care in Marysville, Ohio. Troglin testified that Dr. Spelman had inquired about the bruises on Ian, and in response, Troglin told her about the events of January 4 or 5, 2004 and the wiffle ball bat incident. Troglin testified that at this visit, Ian was prescribed additional medication. Also, Troglin testified that at the January 13th appointment, the doctor requested that X-rays be taken of Ian's sides.
 {¶ 6} Troglin then testified that Ian was getting better from January 13th to 16th, and that Ian had follow up X-rays on January 16th. Troglin also testified that Amber spent the night at her sister Rachel's residence on the night of the 14th until the afternoon of the 15th of January and that during part of the day of the 16th, Amber was running errands and was not at home. Additionally, Troglin testified that during the time when Amber was the only one not at home, he was watching and caring for both Ian and Isaac.
 {¶ 7} Next, Troglin testified that on January 16, 2004, Amber took Ian back to Convenient Care in Marysville, Ohio. Amber testified that while she was there, Dr. Michael Suarez examined Ian and that Dr. Suarez told her that he believed that Ian had fractures on his sides. Amber testified that she began to notice something wrong with Ian's sides around January 6, 2004.
 {¶ 8} Dr. Suarez, who appeared on behalf of the State, testified that he had noticed multiple bruises on Ian's body, including his head, chest, and both sides of his thighs. Dr. Suarez also testified that he noticed that Ian was breathing quickly and that Ian's chest was crackling, which made him believe Ian had cracked ribs. Dr. Suarez testified that he wanted Ian to be taken to Union County Memorial Hospital. Amber testified that Ian and she went to the hospital in an ambulance.
 {¶ 9} Amber testified that when they arrived at the hospital, Ian was taken into the trauma room, where the doctors attached oxygen tubes to him and took a chest X-ray. Amber also testified that at the hospital, two detectives and a police officer questioned her about Ian's condition. Further, Amber testified that at this point she gave the police permission to search her residence. Next, Amber testified that Dr. Lori Lyn Jogan, a certified emergency medical physician, told her about Ian's injuries.
 {¶ 10} Dr. Jogan, who was a witness for the State, testified that upon arrival at the emergency room, Ian was in critical condition. Dr. Jogan testified that she observed that Ian appeared pale and was breathing quickly and short, which are visual signs of respiratory arrest. Dr. Jogan testified that Ian was placed on oxygen, had an IV placed in him, and was intubated. Dr. Jogan testified that during the intubation process, Ian's heart rate dropped below 80, which required the doctors to perform CPR on him. Furthermore, Dr. Jogan testified that the CPR was a life-saving procedure.
 {¶ 11} During her testimony, Dr. Jogan stated that she had ordered two sets of X-rays, one set when Ian arrived at the emergency room and one at the end of his visit. Dr. Jogan stated that the X-rays revealed that Ian's major blood vessels and heart were shifted to the right. The X-rays also revealed multiple rib fractures on both sides, including two ribs which were fractured in two places. The X-rays also showed fluid on the left side of Ian's posterior lung.
 {¶ 12} Dr. Jogan then testified that she believed that Ian's injuries had occurred within a few hours of Ian's arrival to her care. On direct examination, Dr. Jogan was asked whether CPR could have caused the injuries to Ian. But, Dr. Jogan testified that the CPR marks would have been higher and more or less on a line consistent with a line drawn between the two nipples on Ian's chest. Dr. Jogan then testified that after Ian was stabilized to the extent that he could be transported, she had Ian transferred to Children's Hospital in Columbus, Ohio.
 {¶ 13} When asked on direct examination, Dr. Jogan testified that she sent Ian to Children's Hospital because he had severe traumatic wounds, was in critical condition, with respiratory distress, and required intubation. Dr. Jogan also testified that she sent Ian to Children's Hospital, because Union County Memorial Hospital did not have a pediatric care unit with specialists to care for severely injured children, while Children's Hospital did.
 {¶ 14} On cross-examination, Dr. Jogan testified that Ian's prior medical records did not show any notation of a "crunchy" feeling on Ian's sides. Dr. Jogan also testified that some of Ian's bruises could have been from a prior incident; however, she testified that Ian did have some bruises which were not as old and had a blue hue to them. Additionally, Dr. Jogan testified that the intubation was a necessary step to prevent complications due to fluid in his lungs. Further, Dr. Jogan testified that neither the CPR nor the intubation performed on Ian would have caused his injuries.
 {¶ 15} On redirect examination, Dr. Jogan explained how the injuries Ian possessed were inconsistent with injuries that a fall from an ExerSaucer could have caused. Dr. Jogan testified that Ian's injuries required an extreme, direct force to Ian's ribs, as baby's ribs are far too pliable. Dr. Jogan stated that the force required to cause Ian's injuries had to be hard and quick to cause his ribs to fracture. Dr. Jogan testified, as indicated by research with which she was familiar, as well as her experience working in the emergency room, that Ian's injuries were typically exhibited in automobile crashes where there was no restraint being used on the child or in cases of abuse. Further, Dr. Jogan noted that the condition of the bruises on Ian's body showed that Ian's injuries were fresh and were not inflicted by the medical staff. Dr. Jogan also explained that Ian's injuries had occurred within a few hours of coming to the emergency room. Dr. Jogan also testified that Ian's injuries could not have been six days old, as Ian would not have lived for six days in his condition.
 {¶ 16} Next, Detective McGlenn testified for the State. Detective McGlenn, who questioned Troglin, stated that Troglin believed that Ian's injuries occurred no sooner than a couple days before January 9, 2004, when Ian was taken to the doctor. Detective McGlenn testified that Troglin had attempted to explain that Ian's injuries were caused by Ian hitting his head against his crib, being struck by a wiffle ball bat by his brother, Isaac, approximately one month prior to January 16, 2004, and flipping or being flipped out of his ExerSaucer, approximately two days prior to going to the doctor on January 9, 2004. Further, Detective McGlenn testified that regardless of when Ian's injuries occurred, Troglin would have been caring for Ian.
 {¶ 17} Next, the State called Dr. Phil Scribano, a board certified emergency room pediatrician, who worked at Children's Hospital in Columbus, Ohio and as the Medical Director for the Center for Child and Family Advocacy. Dr. Scribano testified that Ian was admitted to Children's Hospital at approximately 2:00 a.m. on January 17, 2004, and he did not see Ian until later that day. Dr. Scribano testified that a portable X-ray, which was taken immediately at Ian's bed, indicated that Ian had a fractured clavicle and a collarbone with a callused formation, meaning that the injury to the collar bone was not an acute injury, because some healing had already occurred. Additionally, Dr. Scribano stated that there was evidence of some healing of Ian's rib fractures, but some were acute and had occurred within zero to seven days prior to the X-rays being taken. Dr. Scribano also testified that Ian's ribs four, five, six, seven, and eight on the right side, and five, six, seven, eight, and nine on the left side, were broken. Further, Dr. Scribano testified that a CT scan of Ian's abdomen indicated a significant laceration of his liver and verified Ian's acute rib fractures with no healing. Dr. Scribano also testified that he noticed three faint brown bruises and noticed on Ian's right flank a rounded, purple-brown bruise of an irregular shape. Further, Dr. Scibano noticed an irregular shaped bruise on the midline of Ian's lower back, as well as, bruises over Ian's left ear and left inner ear. Dr. Scribano also noted that Ian had pneumothorax, which occurs when the lining of the lung and ribcage has been disrupted by a trauma, and that there was an airspace between the lining of the lung and ribcage.
 {¶ 18} Additionally, Dr. Scribano testified that Ian's lower legs had spiral fractures in each tibia, which showed some signs of healing. Dr. Scribano also testified that a significant trauma caused Ian's injuries, and Ian's injuries were indicative of acute physical abuse coupled with chronic and multiple episodes of abuse over a period of time. Also, Dr. Scribano testified that Ian arrived at the emergency room with a flailed chest, resulting from an injury that had occurred within hours of his arrival. Further, Dr. Scribano testified that Ian's condition was caused by a traumatic injury, which would typically be found in motor vehicle crashes. Also, Dr. Scribano noted that Ian's injuries could not have been caused from a fall from an ExerSaucer, because his injuries would have required much more force than would have been generated from a fall from an ExerSaucer. Dr. Scribano continued that safety concerns are presented to and then put out by the Product Safety Commission, which watches over these types of injuries. And, Dr. Scibano noted that the Product Safety Commission had not put out any notification regarding the ExerSaucer. Dr. Scribano also testified that Ian's injuries were not caused by CPR. But, Dr. Scribano noted that when Ian arrived at the emergency room, Ian had a crackling in his chest, which was indicative of rib fractures.
 {¶ 19} When cross-examined, Dr. Scribano indicated that Ian's clavicle fracture was not likely caused by a wiffle ball bat. Additionally, Dr. Scribano believed it was highly unlikely that a two-year-old was capable of generating enough force to cause a clavicle fracture. Dr. Scribano also noted that the spiral fractures in Ian's legs were highly unlikely caused by the nurses who were intubating Ian, because Ian's spiral fractures were healing and had occurred outside the zero to seven day window prior to Ian's arrival at the emergency room.
 {¶ 20} Finally on re-direct examination, Dr. Scribano testified that absent Ian being involved in a car crash, Ian's rib fractures to the posterior or lateral areas of his chest were the result of squeezing. Dr. Scribano also testified that the Troglins history of the accidents provided to the emergency room staff was inconsistent with Ian's injuries.
 {¶ 21} Finally, the State called, as its last witness, Dr. Richard Stalnaker, who held a Ph.D. in theoretical and applied mechanics and specialized in injuries to the body. Dr. Stalnaker testified that the ExerSaucer could not have caused the injuries to Ian, because the injuries were displaced, resulted from significant force, and in some instances Ian's bones were not only broken, but pushed apart. Therefore, Ian's injuries could not be attributable to the ExerSaucer.
 {¶ 22} After all of the testimony, the jury found Troglin guilty on all three counts. Subsequently, a sentencing hearing was held. At the sentencing hearing, Troglin was sentenced to seven years for the felonious assault charge, four years for the child endangering charge, in violation of R.C. 2919.22(A), and four years for the child endangering charge, in violation of R.C.2919.22(B)(1). Additionally, the trial court ordered sentences for the two child endangering convictions to be served concurrently to one another and consecutively to the sentence of the felonious assault conviction.
 {¶ 23} It is from this judgment Troglin has timely appealed, presenting the following assignments of error for our review:
 Assignment of Error No. I THE COURT COMMITTED ERROR BY FAILING TO GRANT DEFENDANT'S RULE29 MOTION FOR JUDGMENT OF AQUITTAL (sic.) BECAUSE THE STATEFAILED TO ESTABLISH THE ELEMENT OF THE INDICTMENT INDICATING THEDEFENDANT COMMITTED THE ALLEGED ACTS.
 Assignment of Error No. II THE GUILTY FINDINGS BY THE JURY WERE AGAINST THE MANIFESTWEIGHT OF THE EVIDENCE.
 Assignment of Error No. III WHEN THE JUDGE MADE ADDITIONAL COMMENTS TO THE JURY FOLLOWINGTHE HOWARD CHARGE, HE DESTROYED THE BALANCE CREATED BY THESUPREME COURT IN CONSTRUCTING THAT CHARGE.
 Assignment of Error No. IV THE TRIAL COURT ERRED BY SENTENCING DEFENDANT TO (sic.)NON-MINIMUM PRISON TERM BASED ON FACTS NOT FOUND BY (sic.) JURYOR ADMITTED BY APPELLANT.
 Assignment of Error No. V IMPOSITION OF CONSECUTIVE SENTENCES ON COUNT (sic.) ONE, TWO,AND THREE BASED ON FACTS NOT FOUND BY THE JURY NOR ADMITTED BYTHE DEFENDANT VIOLATED HIS RIGHTS TO A TRIAL BY JURY ASGUARANTEED BY THE SIXTH AMENDMENT OF THE UNITED STATESCONSTITUTION AND ARTICLE 1, SECTION 10 OF THE OHIO CONSTITUTION.
 Assignment of Error No. I
 {¶ 24} In his first assignment of error, Troglin contends that the trial court erred when it failed to grant his motion for judgment of acquittal under Crim.R. 29. Specifically, Troglin contends that the State failed to establish that he committed the alleged acts, because the State was unable to prove how the injuries occurred. We disagree.
 {¶ 25} Crim.R. 29 provides:
(A) Motion for judgment of acquittal. The court on motion of adefendant or on its own motion, after the evidence on either sideis closed, shall order the entry of a judgment of acquittal ofone or more offenses charged in the indictment, information, orcomplaint, if the evidence is insufficient to sustain aconviction of such offense or offenses. The court may not reserveruling on a motion for judgment of acquittal made at the close ofthe state's case.
 {¶ 26} Under Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt.State v. Bridgeman (1978), 55 Ohio St.2d 261, 381 N.E.2d 184. A motion for acquittal tests the sufficiency of the evidence.State v. Miley (1996), 114 Ohio App.3d 738, 742. When an appellate court reviews a record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Monroe (2005), 105 Ohio St.3d 384,392, citing State v. Jenks (1981), 61 Ohio St.3d 259. Sufficiency is a test of adequacy, State v. Thompkins (1997),78 Ohio St.3d 380, 386, and the question of whether evidence is sufficient to sustain a verdict is one of law. State v.Robinson (1955), 162 Ohio St. 486.
 {¶ 27} This Court, in State v. Eggeman, 3rd Dist. No. 15-04-07, 2004-Ohio-6495, made the following ruling on Crim.R. 29 motions made in a jury trial:
It is a well established principle of law that "[a] defendantwho is tried before a jury and brings a Crim.R. 29(A) motion foracquittal at the close of the State's case waives any error inthe denial of the motion if the defendant puts on a defense andfails to renew the motion for acquittal at the close of allevidence." If the Crim.R. 29 motion is properly renewed at theclose of the evidence, however, then the appellate court mayreview "only the portion of the record toward which the originalmotion was directed" when determining whether there is sufficientevidence.
Id. at ¶ 19 (citations omitted).
 {¶ 28} Here, Troglin's counsel made a Crim.R. 29 motion at the close of the State's case-in-chief. After the conclusion of all evidence in the instant case, Troglin's counsel failed to renew the Crim.R. 29(A) motion. As a result of Troglin's failure to renew his Crim.R. 29(A) motion, he is precluded from alleging error on appeal pertaining to the denial of the motion based on the sufficiency of the evidence introduced in the State's case-in-chief. Thus, Troglin's first assignment of error is overruled.
 Assignment of Error No. II {¶ 29} In his second assignment of error, Troglin asserts that his conviction was against the manifest weight of the evidence. We disagree.
 {¶ 30} When an appellate court analyzes a conviction under the manifest weight standard it must review the entire record, weigh all of the evidence and all of the reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.Thompkins, 78 Ohio St.3d at 387, quoting State v. Martin
(1983), 20 Ohio App.3d 172, 175. Only in exceptional cases, where the evidence "weighs heavily against the conviction," should an appellate court overturn the trial court's judgment. Id.
 Count One — Felonious Assault {¶ 31} To prove felonious assault under R.C. 2903.11(A), the State must prove that the defendant knowingly "[c]ause[d] serious physical harm to another * * *." R.C. 2903.11(A). "A person acts knowingly * * * when he is aware that his conduct will probably cause a certain result." R.C. 2901.22(B). Serious physical harm requires a finding of one of the following:
(a) Any mental illness or condition of such gravity as wouldnormally require hospitalization or prolonged psychiatrictreatment;
 (b) Any physical harm that carries a substantial risk ofdeath;
 (c) Any physical ham that involves some permanent incapacity,whether partial or total, or that involves some temporary,substantial incapacity;
 (d) Any physical harm that involves some permanentdisfigurement or that involves some temporary seriousdisfigurement;
 (e) Any physical harm that involves acute pain of suchduration as to result in substantial suffering or that involvesany degree of prolonged or intractable pain.
R.C. 2901.01(A)(5).
 {¶ 32} In the case sub judice, Troglin admitted that he was the only person caring for his two sons while his wife was not around during January 13 to January 16, 2004. Dr. Lori Lyn Jogan, who first saw Ian at Union County Memorial Hospital, testified that Ian arrived there in critical condition. Dr. Jogan also testified that she believed that Ian's injuries had occurred within a few hours of Ian's arrival at the hospital. Dr. Jogan stated that she believed that Ian's injuries required an extreme, direct force. Dr. Jogan also testified that injuries similar to Ian's were typically exhibited in automobile crashes where there was no restraint being used on the child or in cases of abuse. Finally, Dr. Jogan stated that Ian's injuries could not have been six days old, as Troglin argued, because she believed that Ian would not have survived for six days in the condition he was in when he arrived at the hospital.
 {¶ 33} Further, Dr. Scribano testified that Ian's injuries were inflicted by a significant trauma and where indicative of acute physical abuse coupled with some chronic and multiple episodes of abuse over a period of time. Dr. Scribano also noted that a two-year-old could not have caused Ian's injuries. On redirect examination, Dr. Scribano testified that absent Ian being involved in a car crash, Ian's rib fractures to the posterior or lateral areas of his chest were the result of squeezing. Dr. Scribano also testified that the history of the accidents the Troglins provided to the emergency room staff was inconsistent with Ian's injuries.
 {¶ 34} Upon review of the record, for Count One, we cannot say that in weighing all of the evidence that "the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Thompkins, 78 Ohio St.3d at 387.
 Count Two — Endangering Children Under R.C. 2919.22(A) {¶ 35} To prove endangering children as charged in Count Two under R.C. 2919.22(A), the State must prove that the defendant was the parent, guardian, custodian, person having custody or control, or person in place of a parent of a child, created a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support. R.C.2919.22(A). The State must also prove that the defendant was reckless when creating the substantial risk to the child or safety of the child. R.C. 2901.21(B); State v. McGee (1997),79 Ohio St.3d 193, 195, 1997-Ohio-156. "A person acts recklessly when * * * he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to cause a certain result or is likely to be of a certain nature." R.C.2901.22(C).
 {¶ 36} In the case sub judice, it is undisputed that Troglin is Ian's father. As noted above, Troglin testified that he had control of his two sons while his wife was away between January 13 and January 16, 2004. Also, Dr. Jogan and Dr. Scribano testified that Ian's injuries were inconsistent with Troglin's history of the accidents which might have caused Ian's injuries. Dr. Jogan testified that she believed that the injuries had occurred recently and were not six days old, as Troglin testified to, because Dr. Jogan believed that Ian would not have survived in the condition he was in for six days. Also, Dr. Scribano testified that Ian's injuries were the result of squeezing or a car accident and not from a wiffle ball bat or a fall from Ian's ExerSaucer.
 {¶ 37} Upon review of the record, for Count Two, we cannot say that in weighing all of the evidence that "the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Thompkins, 78 Ohio St.3d at 387.
 Count Three — Endangering Children Under R.C. 2919.22(B)(1) {¶ 38} To prove endangering children as charged in Count Three under R.C. 2919.22(B)(1), the State must prove that the defendant abused a child, under the age of eighteen or a mentally or physically handicapped child under the age of twenty-one. R.C.2919.22(B)(1). The State must also prove that the defendant was reckless when he abused the child, under the age of eighteen or a mentally or physically handicapped child under the age of twenty-one.[2] R.C. 2901.21(B). "A person acts recklessly when * * * he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to cause a certain result or is likely to be of a certain nature." R.C.2901.22(C).
 {¶ 39} In the case sub judice, it is undisputed that Ian is under the age of eighteen. As noted above, Troglin testified that he had control of his two sons while his wife was away between January 13 to January 16, 2004. Also, Dr. Jogan and Dr. Scribano testified that Ian's injuries were inconsistent with Troglin's history of the accidents, which might have caused Ian's injuries. Dr. Jogan testified that she believed that the injuries had occurred recently and were not six days old, as Troglin testified to, because Dr. Jogan believed that Ian would not have survived in the condition he was in for six days. Also, Dr. Scribano testified that Ian's injuries were the result of squeezing or a car accident and not from a wiffle ball bat or a fall from Ian's ExerSaucer.
 {¶ 40} Upon review of the record, for Count Three, we cannot say that in weighing all of the evidence that "the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Thompkins, 78 Ohio St.3d at 387.
 {¶ 41} In sum, having found that Troglin's convictions for felonious assault, endangering children under R.C. 2919.22(A), and endangering children under R.C. 2919.22(B)(1) are not against the manifest weight of the evidence, the second assignment of error is overruled.
 Assignment of Error No. III {¶ 42} In his third assignment of error, Troglin argues that the trial court judge gave an incorrect jury instruction after a correct Howard charge had been given. Specifically, Troglin asserts that after giving a proper Howard charge, which the Ohio Supreme Court approved in State v. Howard (1989)42 Ohio St.3d 18, 23-24, the trial court judge made additional comments to the jury that were inappropriate and were directed at the remaining undecided juror.[3]
 {¶ 43} After several hours of deliberating and after taking three votes on the felonious assault charge, the jury found itself unable to reach a verdict and asked the trial court for further instruction. After discussing the matter with counsel, the trial court determined to give the jury instructions approved by the Ohio Supreme Court in State v. Howard.42 Ohio St.3d, at 18, para. two of the syllabus; the charge can also be found at 4 OJI 415.50.2. After giving the jury the proper Howard charge, the trial court gave the jury the following instruction:
Consider your positions, where you are, where you think youshould be, what you think the evidence showed, and consider oneanother's comments and thoughts on the matter. I can't emphasizetoo strongly the last instruction that I gave you. If this caseis not to be completed as to that first count, we run thepossibility of having to retry that, and go back through all ofthis again on the first count. * * *
(Trial Tr. pp. 605-06).
 {¶ 44} We note, and Troglin concedes, that he did not object to the instruction at trial. Crim.R. 30 provides in pertinent part: "On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." Accordingly, the failure to object to the instruction constitutes a waiver of the objection, absent plain error. Statev. Williford (1990), 49 Ohio St.3d 247, 251.
 {¶ 45} The plain error doctrine allows a court to take note of plain errors or defects affecting substantial rights, even though such error was not brought to the attention of the trial court. See Crim.R. 52(B); State v. Long (1978),53 Ohio St.2d 91; State v. Smith (June 27, 1995), 10th Dist. No. 94APA12-1702. The doctrine is to be used cautiously and only under exceptional circumstances to prevent a manifest miscarriage of justice. Long, 53 Ohio St.2d, at 94. Plain error will not be found without regard to improper jury instructions unless the outcome of the trial would clearly have been different.Williford, 49 Ohio St.3d, at 253; State v. Cooperrider
(1983), 4 Ohio St.3d 226, 227; State v. Joseph,73 Ohio St.3d 450, 455, 1995-Ohio-288.
 {¶ 46} In formulating the charge in Howard, the Ohio Supreme Court was mindful of several competing factors when giving a supplemental instruction to a divided jury and attempted to accommodate those factors. Howard, 42 Ohio St.3d, at 23-24. The Court noted that the supplemental instruction cannot single out jurors in the minority and instruct them to reconsider their position. Id. at 24. Also, the supplemental instruction must not be coercive by stressing that the jury must reach a verdict. Id. at 23-24. Nevertheless, the supplemental instruction must permit the trial judge to remind the jury of its purpose, namely, to reach a unanimous decision. Additionally, the supplemental instruction must be balanced and neutral. Id. at 24. Finally, the supplemental instruction must encourage a verdict, and it must be balanced, asking all jurors to reconsider their opinions. Id. at 25.
 {¶ 47} When a trial court adds to the approved instruction, which occurred in the case sub judice, it risks destroying the balance the Ohio Supreme Court struck in Howard. When an occasion arises in which it is necessary to provide the instruction approved in Howard, that instruction should be given as approved with no additions or omissions.
 {¶ 48} Nevertheless, here, we do not find that the trial court's additional statement following the presentation of theHoward charge destroyed the balance the Ohio Supreme Court created. The additional statement did not single out jurors in the minority, instruct them to reconsider their position, or stress that a jury must reach a verdict. The additional statement does, however, remind the jury of its purpose, and the additional statement is balanced and neutral. Additionally, since we do not believe the outcome would likely have been different in the absence of the additional statement to the jury, we find no plain error in the court's additional charge to the jury. Accordingly, Troglin's third assignment of error is overruled.
Assignments of Error Nos. IV V
 {¶ 49} In his fourth assignment of error, Troglin argues that the trial court erred in sentencing him to a non-minimum prison term, because the trial court relied on facts not within the jury verdict or admitted by him. In his fifth and final assignment of error, Troglin argues that the trial court erred in relying on facts not within the jury verdict or admitted by him. Because these issues are interrelated, we will address them together.
 {¶ 50} Troglin relies upon the holding in Blakely v.Washington for these two assignments of error. This Court has previously ruled that the holding in Blakely does not apply to Ohio's sentencing scheme. State v. Trubee, 3rd Dist. No. 9-03-65, 2005-Ohio-552, at ¶ 16-38. Therefore, Troglin's fourth and fifth assignments of error are overruled.
 {¶ 51} However, despite the State's oversight, we note, sua sponte, that Troglin's indictment specified that he was charged with violating R.C. 2919.22(B)(1), and in the language of that section, specified that he "did recklessly abuse a child under eighteen years of age. The violation of this section having resulted in serious physical harm to the child involved, this constitutes the offense of Endangering Children, in violation of Ohio Revised Code § 2919.22(B)(1) * * *." The indictment added, however, that the crime was a third degree felony. This was incorrect. Although a violation of R.C. 2919.22(A) is a third degree felony when the violation results in serious physical harm, a violation of R.C. 2919.22(B)(1) is a felony of the second degree when it results in serious physical harm to the child involved.
 {¶ 52} Putting aside the reference to a third degree felony, the statement of Troglin's offense within the indictment was more than sufficient to satisfy the requirements of Crim.R. 7(B). The indictment made clear the crime which Troglin was charged both by numerical designation and by repeating the language of the statute. Thus, the reference to a third degree felony was manifestly a typographical mistake and could not have misled Troglin as to the nature of the charge he had to defend against. See Warner v. Zent (C.A.6 1993), 997 F.2d 116, 130, certiorari denied (1994), 510 U.S. 1073; State v. Spriggs (Dec. 18, 1998), 2nd Dist. No. 98-CA-19. "[S]urplusage will not vitiate the pleading in which it is found * * *." Dana v. State (1853),2 Ohio St. 91, 96. Accordingly, we do not find any error in Troglin's indictment.
 {¶ 53} Even though we find that there is no error in Troglin's indictment, we do find error in Troglin's sentencing. Here, the trial court erred in sentencing Troglin on his violation of R.C. 2919.22(B)(1). Contrary to the trial court's decision, endangering children when the violation results in serious physical harm to the child involved, is not a felony of the third degree; it is a felony of the second degree. Thus, this case must be remanded so that the sentencing court can impose the proper sentence in accordance with the Ohio sentencing statutes and guidelines.
 {¶ 54} Thus, in accordance with the foregoing opinion, we must reverse the sentencing of the trial court as to the sentence imposed on Troglin's violation of R.C. 2919.22(B)(1). The judgment of the trial court is affirmed in all other respects. Accordingly, this case must be remanded for re-sentencing in accordance with this opinion.
Judgment Affirmed in Part, Reversed in Part and CauseRemanded.
 Bryant and Shaw, J.J., concur.
[1] The ExerSaucer is a bouncy seat, children's toy, in which Ian was placed. The ExerSaucer is produced by Evenflo Company, Inc. A website describing similar ExerSaucers can be found at http://www.evenflo.com/pr/ac/prac.phtml.
[2] The Ohio Supreme Court has held that the "(e)xistence of the culpable mental state of recklessness is an essential element of the crime of endangering children." State v. Adams (1980),62 Ohio St.2d 151, para. one of the syllabus (construing R.C.2919.22(B)(2)); State v. O'Brien (1987), 30 Ohio St.3d 122, para. one of the syllabus (construing R.C. 2919.22(B)(3)). In both Adams and O'Brien, the relevant statute did not specify the required degree of culpability or plainly indicate that the General Assembly intended to impose strict liability. The language of R.C. 2901.21(B) was dispositive, and the required degree of culpability for both R.C. 2919.22(B)(2) and R.C.2919.22(B)(3) was held to be recklessness. See Adams,62 Ohio St.2d at 152-53; O'Brien, 30 Ohio St.3d at 124.
While Adams and O'Brien involved R.C. 2919.22(B)(2) and2919.22(B)(3), respectively, and this case involves R.C.2919.22(B)(1), we find no reason to depart from the Ohio Supreme Court's logic. R.C. 2919.22(B)(1) does not specify a degree of required culpability nor plainly indicate that the General Assembly intended to impose strict liability. Accordingly, we believe that the existence of the culpable mental state of recklessness is an essential element of the crime of endangering children under R.C. 2919.22(B)(1).
[3] We want to note that in this case the trial court notified counsel that the trial court knew, prior to giving the Howard
charge, that the jury was deadlocked eleven to one. Specifically, after the trial court gave the Howard charge and the jury left the courtroom, the trial court told counsel for both sides the following:
I take it, since counsel didn't contact me at all, thatthere's no resolution, or no ground that we can go anywhere. * * *Well, one of you is making a hell of a mistake, because they'reeleven/one, exactly where they were. I did not know that untiljust now, but that's what the note from the jury says. You wantto look at it. I don't have any problem with that. I'll put itwith the court reporter. But somewhere along the line that juroris about to make a decision.
(Trial Tr. pp. 606-07).
We question why the trial court would divulge that it knew the actual ratio by which the jury was deadlocked.