OPINION
{¶ 1} Defendant-Appellant, Randy L. Wickard, appeals the judgment of the Findlay Municipal Court, convicting him of one count of misdemeanor assault. On appeal, Wickard argues that the trial court erred by denying his motions to dismiss and by allowing the prosecution to proceed on the wrong charge; that the trial court erred in conducting multiple off-the-record bench conferences depriving him of a complete record for appellate review; that the trial court erred in failing to remedy the prejudicial effect of prosecutorial misconduct; that the trial court erred in failing to instruct the jury on possible affirmative defenses applicable to the case; and, that he was denied his constitutional right to effective assistance of counsel. Based on the following, we affirm the judgment of the trial court.
 {¶ 2} In March of 2005, a complaint was filed alleging that Wickard committed assault in violation of R.C. 2903.13(A), a misdemeanor of the first degree. Subsequently, Wickard pled not guilty.
 {¶ 3} In June of 2005, Wickard moved to dismiss the assault charge under Crim.R. 12(A). In addition, Wickard moved to dismiss the assault charge for the State's failure to comply with the discovery requirements of Crim.R. 16.
 {¶ 4} In July of 2005, the trial court found that the State provided Wickard the requested discovery and overruled Wickard's remaining pre-trial motions because they were moot.
 {¶ 5} In September of 2005, a jury trial was held. During the trial, the State provided the testimony of Jordan Zissler, Wickard's foster child, alleging that on February 15, 2005, Wickard had struck Jordan twice with a horse whip. Jordan's testimony was supported by photo exhibits of bruises on his arms and legs, testimony of one of his teachers and the school nurse at the Chamberlin Hill School in the Findlay City School System, Dr. Martin Hanowalt, a pediatric hospitalist with the Blanchard Valley Hospital, and Officer Timothy Graydon, a deputy sheriff with the Hancock County Sheriff's department. After the State rested, Wickard moved for acquittal under Crim.R. 29, which the trial court overruled. Wickard then testified on his own behalf. Wickard testified that he did not cause Jordan's bruises; that he had never hit Jordan with a horse whip; and, that in the past, he had used corporal punishment on his biological son, using a small stick or small rod.
 {¶ 6} At the conclusion of the trial, the jury found Wickard guilty of assault. Subsequently, Wickard was fined three-hundred fifty dollars plus court costs and was sentenced to thirty days in jail. Additionally, the trial court ordered that after three days of incarceration, Wickard would serve the balance of the thirty days in the Hancock County Rehabilitation and Opportunity Center.
 {¶ 7} It is from this judgment Wickard appeals, presenting the following assignments of error for our review:
 Assignment of Error No. I THE COURT ERRED IN DENYING THE DEFENSE MOTION TO DISMISS, ANDIN ALLOWING THE PROSECUTION TO PROCEED ON THE WRONG CHARGE.
 Assignment of Error No. II THE COURT ERRED IN CONDUCTING MULTIPLE BENCH CONFERENCES OFFTHE RECORD, DEPRIVING APPELLANT OF A COMPLETE RECORD FOR REVIEW.
 Assignment of Error No. III THE COURT ERRED IN FAILING TO REMEDY THE PREJUDICIAL EFFECT OFPROSECUTORIAL MISCONDUCT.
 Assignment of Error No. IV THE COURT ERRED (SIC.) FAILING TO INSTRUCT THE JURY ONPOSSIBLE AFFIRMATIVE DEFENSES APPLICABLE TO THE CASE.
 Assignment of Error No. V THE APPELLANT WAS DENIED HIS DUE PROCESS RIGHTS UNDER THE 6THAND 14TH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES DUETO INEFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL.
 Assignment of Error No. I {¶ 8} In his first assignment of error, Wickard argues that the trial court erred in denying his motions to dismiss and allowing the State to proceed under the wrong statutory section. Specifically, Wickard contends that R.C. 1.51 requires that the charge of assault, which is proscribed under a general statutory provision, yield to either a charge of domestic violence in violation of R.C. 2919.25 or child endangering in violation of R.C. 2919.22(B)(1) or (B)(3), which are proscribed under special provisions.
 {¶ 9} R.C. 2903.13(A) under which Wickard was indicted, provides: "No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn."
 {¶ 10} Where there is no manifest legislative intent that a general provision of the Revised Code prevails over a special provision, the special provision takes precedence. State v.Volpe (1988), 38 Ohio St.3d 191, paragraph one of the syllabus;State v. Frost (1979), 57 Ohio St.2d 121. Where it is clear that a special provision prevails over a general provision or the Criminal Code is silent or ambiguous as to which provision prevails, under R.C. 1.51, a prosecutor may charge only on the special provision. State v. Chippendale (1990),52 Ohio St.3d 118, paragraph three of the syllabus.
 {¶ 11} R.C. 1.51 provides:
If a general provision conflicts with a special or localprovision, they shall be construed, if possible, so that effectis given to both. If the conflict between the provisions isirreconcilable, the special or local provision prevails as anexception to the general provision, unless the general provisionis the later adoption and the manifest intent is that the generalprovision prevail.
 {¶ 12} However, where it is clear that a general provision applies coextensively with a special provision, R.C. 1.51 allows a prosecutor to charge on both. Chippendale,52 Ohio St.3d at 118, paragraph two of the syllabus. R.C. 1.51 is applicable only when general and special provisions constitute allied offenses of similar import and, additionally, do not constitute crimes committed separately or with a separate animus for each crime. Id. at 120. When this is the case, an analysis under R.C. 1.51
should proceed. Id.
 Domestic Violence — R.C. 2919.25 {¶ 13} We begin with Wickard's claim that he should have been charged with domestic violence in violation of R.C. 2919.25(A). R.C. 2919.25 provides, in pertinent part, "(A) No person shall knowingly cause or attempt to cause physical harm to a family or household member." R.C. 2919.25(F)(1) defines "family or household member" as:
(1) "Family or household member" means any of the following:
 (a) Any of the following who is residing or has resided withthe offender:
 (i) A spouse, a person living as a spouse, or a former spouseof the offender;
 (ii) A parent or a child of the offender, or another personrelated by consanguinity or affinity to the offender;
 (iii) A parent or a child of a spouse, person living as aspouse, or former spouse of the offender, or another personrelated by consanguinity or affinity to a spouse, person livingas a spouse, or former spouse of the offender.
 (b) The natural parent of any child of whom the offender isthe other natural parent or is the putative other naturalparent.
Here, Wickard's claim fails because Jordan, Wickard's foster child, does not fall within the statutory definition of a "family or household member" under R.C. 2919.25. Therefore, R.C.2919.25(A) is inapplicable and we find that the State was not required to charge Wickard with domestic violence in violation of R.C. 2919.25(A) instead of assault.
 Child Endangering — R.C. 2919.22(B)(1) {¶ 14} Next, Wickard asserts that he should have been charged with child endangering in violation of R.C. 2919.22(B)(1) instead of assault. R.C. 2919.22(B)(1) provides:
(B) No person shall do any of the following to a child undereighteen years of age or a mentally or physically handicappedchild under twenty-one years of age:
 (1) Abuse the child;
 {¶ 15} In State v. Troglin, 3d. Dist. No. 14-04-41,2005-Ohio-6562, this Court provided:
To prove endangering children as charged * * * under R.C.2919.22(B)(1), the State must prove that the defendant abused achild, under the age of eighteen or a mentally or physicallyhandicapped child under the age of twenty-one. The State mustalso prove that the defendant was reckless when he abused thechild, under the age of eighteen or a mentally or physicallyhandicapped child under the age of twenty-one. "A person actsrecklessly when * * * he perversely disregards a known risk thathis conduct is likely to cause a certain result or is likely tocause a certain result or is likely to be of a certain nature."
Id. at ¶ 38. (Citations and footnote omitted). Additionally, inTroglin, we held "that the existence of the culpable mental state of recklessness is an essential element of the crime of endangering children under R.C. 2919.22(B)(1)." Id. at n. 2.
 {¶ 16} Accordingly, under R.C. 2919.22(B)(1), a conviction of child endangering would require proof that Wickard (1) recklessly, (2) abuse, (3) a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age.
 {¶ 17} A comparison of the elements of R.C. 2903.13(A) and R.C. 2919.22(B)(1) in the abstract reveals that the two offenses are not allied offenses because the commission of one will not automatically result in the commission of the other. State v.Rance, 85 Ohio St.3d 632, 1999-Ohio-291, paragraph one of the syllabus; State v. Jones (1997), 78 Ohio St.3d 12, 13. Here, one of the elements of assault requires proof that Wickard acted knowingly while the child endangering conviction only requires proof that Wickard acted recklessly. "Although proof of knowledge may suffice to prove recklessness, proof of recklessness is not sufficient to prove knowledge." State v. Barton (1991),71 Ohio App.3d 455, 464-65; R.C. 2901.22(E). In contrast, child endangering, under R.C. 2919.22(B)(1), requires a victim under eighteen years or twenty-one years of age, depending on whether they are handicapped; assault does not. In addition, R.C.2919.22(B)(1) requires that the child be considered abused, as defined in R.C. 2151.031; assault does not. Consequently, underRance, the commission of one offense can occur without the commission of the other and therefore, these offenses are not allied offenses of similar import.
 {¶ 18} Accordingly, R.C. 1.51 does not apply, and the State was not required to charge Wickard with child endangering in violation of R.C. 2919.22(B)(1) instead of assault.
Child Endangering — R.C. 2919.22(B)(3)
 {¶ 19} Finally, Wickard asserts that that he should have been charged with child endangering in violation of R.C. 2919.22(B)(3) instead of assault. R.C. 2919.22(B)(3) provides:
(B) No person shall do any of the following to a child undereighteen years of age or a mentally or physically handicappedchild under twenty-one years of age:
* * *
(3) Administer corporal punishment or other physicaldisciplinary measure, or physically restrain the child in a cruelmanner or for a prolonged period, which punishment, discipline,or restraint is excessive under the circumstances and creates asubstantial risk of serious physical harm to the child;
 {¶ 20} In State v. O'Brien (1987), 30 Ohio St.3d 122, the Ohio Supreme Court held that "the culpable mental state of reckless is an essential element of the crime of endangering children under R.C. 2919.22(B)(3)." Id. at 124, paragraph one of the syllabus. Accordingly, under R.C. 2919.22(B)(3), a conviction of child endangering would require proof that Wickard (1) recklessly, (2) administer corporal punishment or other physical disciplinary measure, physically restrain the child in a cruel manner or for a prolonged period, (3) the punishment, discipline, or restraint is excessive under the circumstances, (4) the punishment, discipline, or restraint creates a substantial risk of serious physical harm to the child.
 {¶ 21} A comparison of the elements of R.C. 2903.13(A) and R.C. 2919.22(B)(3) in the abstract reveals that the two offenses are not allied offenses because the commission of one will not automatically result in the commission of the other. Here, one of the elements of assault requires proof that Wickard acted knowingly while the child endangering conviction only requires proof that Wickard acted recklessly. "Although proof of knowledge may suffice to prove recklessness, proof of recklessness is not sufficient to prove knowledge." Barton,71 Ohio App.3d at 464-65; R.C. 2901.22(E). In contrast, child endangering, under R.C. 2919.22(B)(3) requires a victim under eighteen years or twenty-one years of age, depending on whether they are handicapped; assault does not. In addition, R.C. 2919.22(B)(3) requires proof that Wickard had inflicted serious physical harm as the result of corporal punishment or other physical discipline; assault does not. Consequently, under Rance, the commission of one offense can occur without the commission of the other and therefore, these offenses are not allied offenses of similar import.
 {¶ 22} Accordingly, R.C. 1.51 does not apply, and the State was not required to charge Wickard with child endangering in violation of R.C. 2919.22(B)(3) instead of assault.
 {¶ 23} Having found that the State was not required to charge Wickard with domestic violence in violation of R.C. 2903.13(A) or child endangering in violation of R.C. 2919.22(B)(1) or (B)(3) instead of assault, Wickard's first assignment of error is overruled.
Assignment of Error No. II
 {¶ 24} In his second assignment of error, Wickard argues that the trial court erred in conducting multiple bench conferences off of the record, which deprived him of a complete record for our review. The State responds that Wickard failed to take proper precautions to insure a complete record for review.
 {¶ 25} Loc.R. 10 of the Findlay Municipal Court provides, in pertinent part:
Pursuant to Ohio Revised Code § 1901.11, § 2301318, (Sic.) §2301.22, the Findlay Municipal Court shall designate a person toact as the Official Court Reporter. Pursuant to Rule ofSuperintendence 11(A), all proceedings conducted in FindlayMunicipal Court shall be recorded by audio electronic recordingdevice. Transcripts from such recordings may be obtained from theOfficial Court Reporter, and costs for such transcripts shall beset by the Court at a per page rate. Such costs shall not betaxed, but shall be paid directly to the Official Court Reporter,except in cases where the defendant is indigent.
 Any person who desires to have an Official Court Reporter atany proceedings or trial shall make separate arrangements to havean independent court reporter in attendance. The name of suchreporter shall be submitted to the Court, and prior approval forsaid person to transcribe the record must be obtained. In theevent an independent court reporter is utilized, costs of saidattendance and the transcription of any record, if necessary,shall be taxed as costs and may be assessed against the losingparty.
 The Official Court Reporter shall maintain the records of allcourt proceedings. Records shall be maintained so as to locateany recorded proceeding not older than one year. All tapes arepublic record subject to disclosure, and any person, upon properrequest, shall be permitted to listen to any tape at a time andplace designated by the Court.
 {¶ 26} The Ohio Supreme Court "has clearly held that reversal of convictions and sentences on grounds of some unrecorded bench and chambers conferences, off-the-record discussions, or other unrecorded proceedings will not occur in situations where the defendant has failed to demonstrate that (1) a request was made at trial that the conferences be recorded or that objections were made to the failures to record, (2) an effort was made on appeal to comply with App.R. 9 and to reconstruct what occurred or to establish its importance, and (3) material prejudice resulted from the failure to record the proceedings at issue." State v.Palmer, 80 Ohio St.3d 543, 554, 1997-Ohio-312 (citations omitted). See, also, State v. Grant (1993), 67 Ohio St.3d 465,481 (requiring a showing of prejudice from an incomplete record involving unrecorded bench and chamber conferences even where attempts had been made to reconstruct and complete the record on appeal).
 {¶ 27} Here, Wickard cannot satisfy the requirements underPalmer to justify a reversal of his convictions based upon an incomplete transcript. Wickard has failed to demonstrate that he requested the bench conferences to be recorded by a pretrial motion or otherwise. The record is also devoid of any request to have an official court reporter at any part of the proceedings or trial. In the absence of such requests, any possible error was waived. See Palmer, 80 Ohio St.3d at 554; Grant,67 Ohio St.3d at 481. Additionally, the record does not provide that Wickard made any effort to reconstruct what occurred at the bench conferences. For example, Wickard did not move for additional time to review the audio recording of the proceedings and trial to determine whether the bench conferences were recorded, nor did Wickard provide any indication of whether he actually listened to the audio recording of the proceedings and trial.
 {¶ 28} Accordingly, Wickard's second assignment of error is overruled.
Assignment of Error No. III
 {¶ 29} In his third assignment of error, Wickard argues that the trial court erred in failing to remedy the prejudicial effect of prosecutorial misconduct. Specifically, Wickard asserts that the trial court erred in allowing Officer Graydon, one of the State's witnesses, to bring whips into the courtroom; that the trial court erred by not admonishing the jury that Wickard was not required to take a polygraph test; and, that the trial court erred in failing to admonish the jury about possible nods or prompts from the audience during the victim's testimony.
 {¶ 30} "The test for prosecutorial misconduct is whether the remarks were improper and, if so, whether the remarks prejudicially affected the accused's substantial rights." Statev. Twyford, 94 Ohio St.3d 340, 354-55, 2002-Ohio-894; see, also,State v. Smith (1984), 14 Ohio St.3d 13, 14. Thus, an improper question or remark made by the prosecutor can nevertheless fail to constitute reversible error. State v. Satta, 3d Dist. No. 9-01-38, 2002-Ohio-5049, at ¶ 27. Ultimately, "[t]he touchstone of this analysis `is the fairness of the trial, not the culpability of the prosecutor.'" Tywford, 94 Ohio St.3d at 355.
 {¶ 31} In his brief, Wickard highlights specific portions of the transcript for us to review. With respect to the whips being brought into the courtroom, during Officer Graydon's testimony, Wickard's Counsel noted that Officer Graydon did not seize any horse whips from Wickard's residence for evidence. Additionally, Wickard's counsel noted that Officer Graydon brought two other whips with him into the courtroom and that neither of those whips had anything to do with the crime. However, Officer Graydon expressed that the two whips were of similar design to those found in Wickard's residence.
 {¶ 32} With respect to the polygraph test, the prosecution and Officer Graydon had the following exchange:
Q: Did you again speak with Mr. Wickard on February 28th?
 A: Yes, I did. And that was a phone conversation in reply tomy previous offering Mr. Wickard to take a polygraph test toclarify his truthfulness.
 [Defense Counsel]: I'm going to object, Your Honor.
 The Court: I'll sustain the objection, we're not going to gothere.
(Trial Tr. p. 186). Additionally, after Wickard moved for a mistrial based upon this question, the trial court instructed the jury that, while you were out there were some issues we talkedabout, one of the things that we wanted to make sure is there isno misunderstanding based upon a response that was made, it wasn'teven solicited, but at one point Deputy Graydon made mention of[a] request for a polygraph exam. Of course we didn't hearanything about that, I want to specifically instruct you folksnot to consider that in any way. Not to presume was there one,wasn't there, I mean just totally disregard that commentcompletely. So if you would please, it doesn't have anything todo with this case at all.
(Trial Tr. pp. 208-09).
 {¶ 33} With respect to Jordan's alleged coaching, the trial judge noted "I was watching [Jordan's foster mother and the lady sitting beside her]. They moved so that the child could see them at all times, but I was specifically looking to see if there was any type of communication being attempted, and I didn't see any." (Trial Tr. p. 206).
 {¶ 34} Upon our review of the record, we cannot find that the prosecutor's actions affected the outcome of this case sufficiently to require that the verdict be overturned or set aside.
 {¶ 35} Accordingly, Wickard's third assignment of error is overruled.
 Assignment of Error No. IV {¶ 36} In his fourth assignment of error, Wickard argues that the trial court erred in failing to instruct the jury on possible applicable affirmative defenses. Specifically, Wickard asserts that the trial court should have instructed the jury on corporal punishment.
 {¶ 37} We begin by noting that Wickard failed to object to the trial court's instructions and he did not proffer an instruction on possible applicable affirmative defenses. Where a defendant has not objected to the lack of a jury instruction or proffered an instruction on the asserted affirmative defense, we must determine if the lack of such an instruction constitutes plain error. State v. Durkin (1981), 66 Ohio St.2d 158, 161. Crim.R. 30(A) provides that "[o]n appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects" at trial. However, Crim.R. 52(B) provides that "a court may take notice of plain errors that affect substantial rights[.]" Durkin, 66 Ohio St.2d at 161. Furthermore, an erroneously omitted jury instruction "`does not constitute a plain error or defect under Crim.R. 52(B) unless, but for the error, the outcome of the trial clearly would have been otherwise.'" State v. Cooperrider (1983),4 Ohio St.3d 226, 227, quoting State v. Long (1978), 53 Ohio St.2d 91, paragraph two of the syllabus.
 {¶ 38} Here, Wickard does not provide, and we have not been able to find, any authorities or statutes which indicate that corporal punishment is an affirmative defense to assault in violation of R.C. 2903.13. Moreover, this Court does not believe that a jury would conclude striking a child two times with a horse whip would be within the realm of permissible corporal punishment. Thus, we cannot find that but for the trial court's failure to include a jury instruction on corporal punishment, the outcome of the trial clearly would have been otherwise.
 {¶ 39} Accordingly, Wickard's fourth assignment of error is overruled.
 Assignment of Error No. V {¶ 40} In his fifth assignment of error, Wickard argues that he was denied his right to effective assistance of counsel.
 {¶ 41} An ineffective assistance of counsel claim requires proof that a trial counsel's performance fell below objective standards of reasonable representation and that the defendant was prejudiced as a result. State v. Bradley (1989),42 Ohio St.3d 136, paragraph two of syllabus. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, but for counsel's errors, the outcome at trial would have been different. Id. at paragraph three of syllabus. "Reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. State v. Waddy (1992), 63 Ohio St.3d 424, 433, superseded by Constitutional amendment on other grounds as recognized by State v. Smith, 80 Ohio St.3d 89, 103,1997-Ohio-355.
 {¶ 42} Furthermore, the court must look to the totality of the circumstances and not isolated instances of an allegedly deficient performance. State v. Malone (Dec. 13, 1989), 2d Dist. No. 10564. "Ineffective assistance does not exist merely because counsel failed `to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it.'" Id. quoting Smith v. Murray (1986), 477 U.S. 527.
 {¶ 43} Wickard raises multiple reasons for claiming ineffective assistance of counsel. Specifically, Wickard contends that his defense counsel was ineffective for failing to object to the use of certain words, such as "injury", without definition or instruction; that his defense counsel was ineffective for failing to call Jordan's counselor as a witness; that his defense counsel was ineffective for failing to object to the prosecutor's use of double or loaded questions; and, that his defense counsel was ineffective for failing to object to Dr. Hanowolt's testimony of his opinion that this case involved "child abuse" even though he was not charged with child abuse.
 {¶ 44} Upon review, it is our conclusion that the evidence in this case regarding these claims of ineffective assistance of counsel revealed tactical or strategic trial decisions. As such, they do not fall below an objective standard of reasonable representation. Nor, in this case, did they create any reasonable probability of a different outcome. Moreover, tactical or strategic trial decisions, even if ultimately unsuccessful, will not substantiate a claim of ineffective assistance of counsel.State v. Garrett (1991), 76 Ohio App.3d 57, 61.
 {¶ 45} Additionally, Wickard asserts that his defense counsel was ineffective for failing to raise the issue that Wickard was charged under the wrong offense; that his defense counsel was ineffective for failing to object to off-the-record sidebar conferences; that his defense counsel was ineffective for failing to object to the display of horse whips in the court room; that his defense counsel was ineffective for failing to seek input into the court's wording of its admonition to the jurors concerning the improper mention of a polygraph test; and, that his defense counsel was ineffective for failing to insist that his client had the right to present affirmative defenses. Based on our disposition in the first, second, third, and fourth assignments of error, we cannot find that there is a reasonable probability that Wickard's claimed deficiency of his defense counsel would have changed the result of the trial.
 {¶ 46} Accordingly, Wickard's fifth assignment of error is overruled.
 {¶ 47} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed.
 Bryant, P.J. and Shaw, J., concur.